**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-0154-WJM-CBS

BIO MED TECHNOLOGIES CORPORATION,

 Plaintiff,

v.

SORIN CRM USA, INC., f/k/a ELA MEDICAL, INC.,

 Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

 Before the Court is Defendant's Early Motion for Partial Summary Judgment ("Motion"). (ECF No. 20.) For the reasons set forth below, the Motion is granted in part, and denied in part.

## I. BACKGROUND

 Plaintiff alleges that it entered into a distribution agreement ("the Agreement") with Defendant, under which it agreed to act as a sales representative for Defendant's products. (ECF No. 1 at 4.) The Agreement specifies what accounts and sales territories Plaintiff is to handle, and a host of other details governing the relationship between the parties. (*See generally* ECF No. 22.) Plaintiff filed the instant action on January 21, 2014, following Defendant's alleged breach of the Agreement. On April 24, 2014, Defendant filed its Motion requesting dismissal of Plaintiff's claims for fraud, conversion, and interference with business relations. (ECF No. 20). The Court discusses each claim below.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute regarding a material fact depends upon whether the evidence presents a sufficient disagreement as to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense, and a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must examine the facts in the light most favorable to the nonmoving party, and resolve factual ambiguities against the moving party.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).  The summary judgment standard thus favors a right to trial.  *See id.*

## III.  ANALYSIS

### A.  Choice of Law

The Court must first determine what law applies to the resolution of Plaintiff's claims.  Federal courts sitting in diversity apply the forum state's choice of law principles.  *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009).  Colorado courts "apply the law chosen by the parties unless

there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern." *Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 WL 363324, at *2 (Colo. App. Jan. 31, 2013) (citing *Hansen v. GAB Bus. Services, Inc.*, 876 P.2d 112, 113 (Colo. App. 1994)). Here, the Agreement includes a choice of law provision that states "[t]he laws of the State of Minnesota shall govern [the] Agreement in all respects." (ECF No. 22 at 14.) However, this provision only applies to Plaintiff's breach of contract claim, not its tort claims. *See Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, 2013 WL 2114372, at *5 (D. Colo. May 15, 2013) (unpublished) ("Tort claims . . . do not arise out of a contract") (citing *Cagle v. The James St. Group*, 400 F. App'x 348, 356 (10th Cir. 2010). The Court must therefore look elsewhere in Colorado's choice of law provisions for the law applicable to Plaintiff's tort claims. *See U.S. Aviation*, 582 F.3d at 1143.

Colorado courts use the "most significant relationship" test to resolve choice of law issues in tort actions. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007). Colorado's choice of law principles consider "the needs of the interstate and international systems, the relevant policies of the forum and other interested states, protection of justified expectations, the basic policies underlying the particular field of law, predictability and uniformity of result, and ease of determination and application of the law to be applied." *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)). In applying these general principles, the Court is to consider (1) the place of injury; (2) the place where the injury-causing conduct occurred; (3) the parties' residence, place of incorporation, and place of business; and (4) the place where the relationship, if any, between the parties is centered. *Id.* (citing RESTATEMENT (SECOND)

3

OF CONFLICT OF LAWS § 145 (1971)).

First, the Court cannot determine a single place of Plaintiff's injury with respect to any of its tort claims. Plaintiff's sales territories specified in the Agreement include Pennsylvania, Maryland, Delaware, Barbados, and Trinidad. (ECF Nos. 1 at 4 & ECF No. 22 at 17-18.) Yet Plaintiff does not allege it sustained harm in any particular territory; rather, Plaintiff only alleges it sustained harm generally. The Court therefore accords this factor no weight, as the place of injury in this case "bears little relation to the occurrence and the parties with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e (1971).

Second, the Court cannot determine with certainty where the injury-causing conduct occurred. Neither party alleges that Defendant's alleged tortious actions occurred in any specific state. However, Defendant avers it was headquartered in Minnesota from the time of the contract through early 2013. (ECF No. 32 at 4.) As the Agreement had an effective date of August 1, 2009, the Court infers that the majority of Defendant's alleged injury-causing conduct occurred in Minnesota.

Third, in its Complaint, Plaintiff states that its principal place of business is in Pennsylvania, and that Defendant is incorporated in Delaware with its principal place of business in Colorado. (ECF No. 1 at 1.) That "one of the parties is domiciled or does business in a given state will usually carry little weight of itself." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e (1971). None of these states appears to hold any significance with respect to the Plaintiff's injuries or Defendant's actions. The Court concludes that this factor is entitled no weight.

Fourth, the parties' relationship was arguably centered in Minnesota, where

Defendant was based and the contract was likely drafted. (*See* ECF No. 31-1 at 1.) The parties also agreed to a Minnesota choice of law provision in the Agreement. (ECF No. 22 at 14.) While the provision is not dispositive of the Court's choice of law analysis with regard to Plaintiff's tort claims, it nonetheless reveals the parties' mutual understanding that their relationship would be centered, to some not insubstantial degree, in Minnesota. The provision is also therefore relevant in terms of protecting the parties' justified expectations. *AE, Inc.*, 168 P.3d at 510.

Taking all of the factors into consideration, the Court finds that Minnesota law governs the disposition of Plaintiff's tort claims for purposes of this Motion.[1]

**B.     The Economic Loss Doctrine**

Defendant argues that Plaintiff's fraud, conversion, and interference claims are barred by the economic loss doctrine, and that this matter should proceed only as to Plaintiff's breach of contract claim. (ECF No. 21.) In Minnesota, the economic loss doctrine prevents a party from recovering tort damages for a breach of contract, "absent an 'exceptional case' where the breach of contract constitutes or is accompanied by an independent tort." *Cherne Contracting Corp. v. Wausau Ins. Cos.*,

---

[1] The decision to apply Minnesota law rather than Colorado, Delaware, or Pennsylvania law is likely inconsequential to the Court's holding, as each state has adopted the economic loss rule, discussed below, in some form. *Town of Alma v. AZCO*, 10 P.3d 1256, 1264 (Colo. 2000); *Brasby v. Morris*, 2007 WL 949485, *6 (Del. Super. Ct. 2007); *Jones v. W. Union Fin. Servs.*, 513 F. Supp. 2d 1098, 1100 (D. Minn. 2007); *First Republic Bank v. Brand*, 2000 WL 33394627, *5 (Pa. D & C 4th 2000). Moreover, each state recognizes fraud as a potential exception to the economic loss rule. *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998); *Air Prods. & Chems. v. Eaton Metal Prods. Co.*, 272 F. Supp. 2d 482, 491 (E.D.Pa. 2003); *Town of Alma*, 10 P.3d at 1264; *Brasby*, 2007 WL 949485, *7. As such, there is little variation among the "relevant policies of the forum and other interested states" and "the basic policies underlying the particular field of law," thus ensuring "predictability and uniformity of result." *AE, Inc.*, 168 P.3d at 510.

572 N.W.2d 339, 343 (Minn. App. 1997) (citing *Wild v. Rarig*, 234 N.W.2d 775, 789-80 (Minn. 1975) (internal quotation marks omitted). "In such cases the duty is an incident of the relationship rather than the contract." *Id.* Therefore, the determinative factor is "the nature of the duties alleged to have been breached." *Carlson, Inc. v. Int'l Bus. Machs. Corp.*, 2013 WL 6007508, at *5 (D. Minn. Nov. 13, 2013). The Court will consider each of Plaintiff's tort claims in turn.[2]

    1.    <u>Conversion</u>

Plaintiff alleges that Defendant converted its "business and contacts." (ECF No. 1 at 9.) Plaintiff states, among other things, that Defendant took "all of the accounts assigned to [Plaintiff] under the Agreement" and misappropriated the sub-representatives Plaintiff wished to hire. (ECF No. 1 at 6-7.) In Minnesota, the tort of conversion is limited to "willful interference with the personal property of another." *H.J., Inc. v. IT&T Corp.*, 867 F.2d 1531, 1547 (8th Cir. 1989). Although Minnesota courts have not considered what constitutes "personal property" in the context of conversion, the Eighth Circuit has held that Minnesota courts would likely apply the "general rule . . . that the cause of action only applies to tangible property, or intangible property

---

[2] In its Response, Plaintiff requests that the Court defer consideration of the Motion pursuant to Federal Rule of Civil Procedure 56(d), as Plaintiff "does not presently possess all of the facts necessary to establish the full extent and nature of the damages" caused by Defendant's allegedly tortious conduct. (ECF No. 31 at 10.) However, there "is no requirement in Rule 56 that discovery be complete before summary judgment can be entered." *Estate of Ricci v. Salt Lake City Corp.*, 180 F. App'x 810, 812 (10th Cir. 2006) (unpublished). "The party seeking more time must provide an affidavit identifying the facts that are not available and what steps she has taken to obtain those facts." *Id.* at 812-13; *see also* Fed. R. Civ. P. 56(d). Plaintiff has failed to do so here. (*See* ECF No. 31-1.) Moreover, "merely asserting that the evidence supporting a party's allegation is in the hands of the opposing party is insufficient to justify a denial of a motion for summary judgment." *Ricci*, 180 F. App'x at 813. The Court therefore declines to defer consideration of the Motion under Rule 56(d).

customarily merged in, or identified with, some document." *Id.* (citation omitted); *see also Mid–List Press v. Nora*, 275 F. Supp. 2d 997, 1003 (D. Minn. 2003). However, Plaintiff presents no evidence that its claimed property interest in its "business and contacts" was memorialized or incorporated in any document other than the Agreement. Thus, because Plaintiff's conversion claim is not distinct from Defendant's alleged breach of contract, it fails under the economic loss rule. The Court therefore finds that summary judgment is appropriate on the conversion count of Plaintiff's complaint.

    2.    <u>Interference</u>

Plaintiff further alleges that Defendant "interfered with [its] business." (ECF No. 1 at 10.) The claim of "wrongful interference with business relationships . . . is actionable in Minnesota." *Gieseke v. IDCA, Inc.*, 844 N.W. 2d 210, 219 (Minn. 2014) (internal quotation marks and citation omitted). However, the allegations supporting this claim all relate to Defendant's alleged interference with Plaintiff's rights under the Agreement. (*See* ECF No. 1 at 6-7.) Because Plaintiff has not alleged that Defendant harmed any business interest of Plaintiff independent of the Agreement, the "breach of duty is indistinguishable from the breach of contract." *Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302, 308 (Minn. App. 1992) (citing *Lopus v. L & L Shop-Rite, Inc.*, 430 N.W.2d 757, 760 (1988)). The Court therefore grants summary judgment as to Plaintiff's interference with business relations claim, as it is barred by the economic loss rule.

    3.    <u>Fraud</u>

Plaintiff alleges Defendant "committed fraud when it made material misrepresentations [to Plaintiff] . . . to induce Plaintiff to enter into the Agreement for the purpose of stealing Plaintiff's "accounts and contacts." (ECF No. 1 at 8-9.) Plaintiff

further states that Defendant had "no intention of carrying out its obligations" under the Agreement. (*Id.* at 8.) Plaintiff categorizes its general fraud count as a claim for fraudulent inducement (ECF No. 31 at 9), which necessarily occurs "prior to the contract." *Marvin Lumber & Cedar Co. v. PPG Indus. Inc.*, 223 F.3d 873, 879 (8th Cir. 2000). Fraud claims are not categorically barred by the economic loss rule, but "must be based upon a misrepresentation that was outside of or collateral to the contract." *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998).

For example, in *AKA*, the plaintiff and defendant entered into a distribution agreement. *Id.* at 1084. Although the agreement specified a one-year term, the defendant assured the plaintiff the relationship would be "a long one." *Id.* The plaintiff argued that the defendant's statement was a fraudulent misrepresentation. *Id.* at 1087. However, the Court held that "duration was a term of the contract, and breach of that term was the basis for" the plaintiff's contract claim. *Id.* The claim was therefore "not independent of the contract and its performance," and was barred by the economic loss rule. *Id.*

Here, Defendant's alleged misrepresentations included "statements about assisting [Plaintiff] with its accounts, hiring sub-reps and technicians, supporting the products and supplying new products to the market." (ECF No. 31-1 at 2.) Some of these misrepresentations directly reflect the parties contractual duties (*see* ECF No. 22); thus, any fraud claim based on those misrepresentations is barred under the economic loss rule. *See AKA*, 137 F.3d at 1087. However, the Court cannot find that none of the misrepresentations alleged are collateral to the Agreement, and for purposes of this Motion the Court must resolve all factual ambiguities against the

Defendant. *Houston*, 817 F.2d at 85. The merits of Plaintiff's fraud claim will likely be clearer as discovery in this matter progresses. The Court will therefore deny, without prejudice to refiling after the conclusion of discovery, the portion of the Motion seeking summary judgment on the fraud count of Plaintiff's complaint.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Early Motion for Partial Summary Judgment (ECF No. 20) is GRANTED IN PART and DENIED IN PART;

2. The Motion is GRANTED as to Counts Three (Conversion) and Four (Interference with Business Relations) of Plaintiff's Complaint (ECF No. 1);

3. The Motion is DENIED without prejudice in all other respects; and

4. This matter remains pending as to Counts One (Breach of Contract) and Two (Fraud) of Plaintiff's Complaint (ECF No. 1).

Dated this 30th day of January, 2015.

BY THE COURT:

William J. Martínez
United States District Judge