**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-0154-WJM-CBS

BIO MED TECHNOLOGIES CORPORATION,

     Plaintiff,

v.

SORIN CRM USA, INC., f/k/a ELA MEDICAL, INC.,

     Defendant.

---

**ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

On January 21, 2014, Plaintiff Bio Med Technologies Corporation ("Plaintiff")

initiated this action against Defendant Sorin CRM USA, Inc. ("Defendant"), for breach of

contract, fraud, conversion, and interference with business relations.  (ECF No. 1.)

Defendant subsequently filed an Early Motion for Partial Summary Judgment, which the

Court granted in part as to Plaintiff's conversion and interference with business relations

claims.  (ECF No. 73.)  The Motion was denied without prejudice in all other respects.

(*Id*. at 9.)  On February 17, 2015, Defendant filed a Motion for Summary Judgment

("Motion") as to Plaintiff's remaining claims (breach of contract and fraud), which is now

before the Court.  (ECF No. 79.)  For the reasons set forth below, the Motion is granted

in part.

## I.  BACKGROUND

The following facts are undisputed unless otherwise noted.  Defendant is a

medical device company that develops, manufactures, and sells medical technologies

for the treatment of cardiac rhythm disorders.  (ECF No. 76 at 2.)  Plaintiff and

Defendant executed an Independent Sales Representative Agreement ("Agreement")

with an effective date of August 1, 2009.  (*Id*. at 3.)  Under the Agreement, Plaintiff sold

cardiac rhythm management products for Defendant.  (*Id*.)  Plaintiff was operated by

Jack Oliver, a medical device sales representative, who signed the Agreement on

Plaintiff's behalf.  (*Id*.; ECF No. 95-1 at 15.)  No amendments were made to the

Agreement, which governed the parties' relationship until it terminated on August 1,

2014 when Defendant provided Plaintiff a non-renewal notice.  (ECF No. 76 at 3.)

Plaintiff filed this action on January 21, 2014, before the Agreement actually terminated.

(ECF No. 1.)

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

regarding a material fact depends upon whether the evidence presents a sufficient

disagreement as to require submission to a jury or, conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense, and a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The

Court must examine the facts in the light most favorable to the nonmoving party, and resolve factual ambiguities against the moving party. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987). The summary judgment standard thus favors a right to trial. *See id.*

## III.  ANALYSIS

Only Plaintiff's breach of contract and fraud claims remain. (ECF No. 73.) Before proceeding to its analysis of those claims, the Court must first determine what law to apply. Federal courts sitting in diversity rely on the forum state's choice of law principles. *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009). The Court has previously held that Minnesota law governs Plaintiff's tort claims under Colorado's choice of law principles. (ECF No. 73 at 5.) Finding no reason to deviate from that prior analysis, the Court applies Minnesota law to Plaintiff's fraud claim (as the parties have in their briefs).

As for Plaintiff's breach of contract claim, the Agreement contains a choice of law provision that states "[t]he laws of the State of Minnesota shall govern this Agreement in all respects." (ECF No. 95-1 at 14.) Colorado courts "apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern." *Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 WL 363324, at *2 (Colo. App. Jan. 31, 2013) (citing *Hansen v. GAB Bus. Services, Inc*., 876 P.2d 112, 113 (Colo. App. 1994)). The Court noted in a prior Order that Defendant alleged it was headquartered in Minnesota from the time of contract through early 2013, and that

3

"the parties' relationship was arguably centered in Minnesota, where Defendant was based and the contract was likely drafted."  (ECF No. 73 at 3-5.)  The Court accordingly finds that the parties had a reasonable basis for choosing Minnesota law at the time the contract was signed.  Moreover, both parties apply Minnesota law to Plaintiff's breach of contract claim, and neither party argues that another state's law should apply. (*Compare* ECF No. 76, *with* ECF No. 94.)  The Court will therefore give effect to the choice of law provision and apply Minnesota law to Plaintiff's breach of contract claim.

## A.    Breach of Contract

Plaintiff's breach of contract claim contains two components:  Defendant's alleged breach of an express provision of the Agreement, and its breach of the implied covenant of good faith and fair dealing.  (ECF No. 94.)  Defendant moves for summary judgment on Plaintiff's breach of contract claim in its entirety, and asserts that, even if Plaintiff's claim is cognizable, the Agreement's limitation of damages provision bars the relief Plaintiff seeks.  (ECF Nos. 76; 100.)  The Court addresses Plaintiff's claim and Defendant's arguments below.

### 1.    The Agreement's Express Terms

Defendant argues that Plaintiff has failed to identify a breach of any specific provision in the Agreement.  (ECF No. 76 at 21.)  Plaintiff responds that the Agreement is ambiguous with regard to which party must supply technicians for non-sales related post-operative checkups.  (ECF No. 94 at 36.)  Plaintiff argues that, while the Agreement clearly states Plaintiff is responsible for providing technical personnel necessary for sales, the contract makes no such requirement for non-sales related

4

functions such as post-operative checkups, and does not define "technical support."[1]

(*Id*.)  According to Plaintiff, this ambiguity should therefore be construed against

Defendant as the Agreement's drafter.  (*Id*.)

The Court fails to see any ambiguity in the Agreement regarding Defendant's or

Plaintiff's obligations to provide technical support.  The Agreement states that Plaintiff

"shall be responsible for providing any technical service representatives as may be

necessary for [Plaintiff] to provide adequate support and coverage in the Territory."

(ECF No. 95-1 at 9.)  This provision speaks only to Plaintiff's technical service

obligations, not Defendant's, and is therefore unambiguous as to the parties' duties in

this regard.  Defendant further states that no other provision in the Agreement requires

Defendant to take any action, or prohibits it from taking any action, regarding technical

support services.  (ECF No. 100 at 14.)  Thus, to the extent Plaintiff is asking the Court

to impose an obligation on Defendant that does not exist in the Agreement, it declines

to do so.[2]  *See, e.g.*, *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 746

---

[1]  Plaintiff fails to cite what provision of the Agreement it is referring to.

[2]  Plaintiff seems to assume that Defendant's pre-contract representations are
incorporated into the Agreement.  According to Plaintiff, "[Defendant's] actions support, in large
degree, its pre-Agreement representations to [Plaintiff] about providing support to [Plaintiff],"
and "[Defendant] asserted that the support it promised, made before the Agreement was
signed, to entice [Plaintiff's] commitment, would be forthcoming, despite absence from the
Agreement."  (ECF No. 94 at 36-37.)  Plaintiff thus appears to be making a parol evidence
argument.

First, however, there is no analysis of, or even reference to, the parol evidence rule in
Plaintiff's Response.  The Court will not scrutinize Plaintiff's briefs to find arguments that have
not been clearly or expressly made.  *McKinzy v. IRS*, 367 F. App'x 896, 897 (10th Cir. 2010)
("Judges are not like pigs, hunting for truffles buried in briefs."); *Mitchell v. City of Moore,
Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb
the record in order to make [the plaintiff's] arguments for him.").  Second, Plaintiff provides no
citation to evidence in the record following its factual assertions, which violates the

(Del. 1997) ("Contract interpretation that adds a limitation not found in the plain language of the contract is untenable.").  Summary judgment is therefore appropriate on Plaintiff's breach of contract claim, insofar as this claim relates to a breach of an express provision of the Agreement.

### 2.    The Implied Covenant of Good Faith and Fair Dealing

Defendant argues that the Court should not reach the merits of Plaintiff's good faith and fair dealing claim because it was never pled in the Complaint, and Defendant would be unduly prejudiced if the claim proceeded to trial.  Defendant allegedly had "no notice of the need to defend against a claim for breach of an implied covenant of good faith and fair dealing, and took no discovery on this claim as a result."  (ECF No. 100 at 11-12.)  The Court is not persuaded.

It is not clear to the Court that breach of the covenant of good faith and fair dealing is legally distinct from a generic breach of contract claim under Minnesota law. The covenant of good faith and fair dealing is implied in every non-sales contract in Minnesota.  *Am. Warehousing & Distrib., Inc. v. Michael Ede Mgmt., Inc.*, 414 N.W.2d 554, 557 (Minn. Ct. App. 1987).  It is therefore a binding contractual term despite not being reduced to writing or even expressly agreed to by the parties.  "Thus, an alleged violation of the implied covenant of good faith cannot form the basis for an independent

---

undersigned's practice standards and this District's Local Rules.  D.C.COLO.LCivR 7.1(e); WJM Revised Practice Standard II.E.2; *see also Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) ("[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record.'").  Therefore, Plaintiff has not shown that a material dispute of fact exists due to Defendant's pre-contract representations.

tort action or even its own cause of action." *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 673-74 (7th Cir. 2013). Plaintiff's allegations that Defendant breached the implied covenant was therefore properly pled as a breach of contract claim.[3] *See id.*

Turning to the merits of this claim, the covenant of good faith and fair dealing requires that one party not "unjustifiably hinder" the other party's performance of the contract. *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). As such, it "does not extend to actions beyond the scope of the underlying contract." *Id.* at 503. "To establish a violation of this covenant, a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty." *Minnwest Bank Cent. v. Flagship Properties LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004).

---

[3] Defendant also argues that Minnesota law does not recognize a cause of action for breach of the implied covenant where the claimed breach arises from the same conduct as a breach of contract claim. (ECF No. 100 at 12.) To the contrary, the Minnesota Court of Appeals has held exactly the opposite. *Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 39 (Minn. Ct. App. 2012) ("In summary, we conclude that 3M's claims for breach of the implied covenant of good faith and fair dealing are permissible even if they are based on the *same conduct* as 3M's claims for breach of the express terms of the insurance policies." (emphasis added)). Although Plaintiff cannot recover damages on both theories for the same conduct, this concern is moot because the Court has granted summary judgment on Plaintiff's claims for breach of any express provision of the Agreement. *See id.* at 37.

To address Defendant's other argument that this claim comes as an unfair surprise, Plaintiff's Complaint contains detailed factual allegations regarding Defendant's alleged breach of the Agreement that are substantially the same allegations on which Plaintiff now relies to establish a breach of the implied covenant. (*Compare* ECF No. 1 at 6-7, *with* ECF No. 94 at 34-35.) The Final Pretrial Order in this matter also generally reflects Plaintiff's claims that "[s]oon after the [Agreement] was signed, Sorin began a process of attempting to undermine BioMed, take away its territory and deny the support promised to BioMed." (ECF No. 107 at 3.) It would therefore be hard to believe that Defendant conducted no discovery on these allegations.

The entirety of Plaintiff's argument, made with no citations to the record, is as follows:

> Sorin repeatedly violated this covenant by failing to assist Bio Med with sales, refusing to undertake its duties in the sales process, including communicating with Bio Med, providing support, interviewing and approving proposed sub reps and technicians, providing promised Sorin product in Territory granted to Bio Med, failing to follow Sorin's own Code of Conduct, routinely and improperly maligning and belittling Bio Med and Oliver and failing to prevent and terminate inappropriate and destructive conduct by Sorin's highest ranking US managers.

(ECF No. 94 at 34-35.)  The Court addresses what it believes to be Plaintiff's arguments in turn.[4]

a.    *Sub-Representatives and Technicians*

Plaintiff argues that Defendant breached the covenant of good faith and fair dealing when it refused to approve sub-representatives and technicians.  (*Id*. at 35.) The Agreement states: "[Plaintiff] shall not hire any employee, agents, or sub-representatives . . . to perform services to be performed by [Plaintiff] under this Agreement without prior written approval of [Defendant]."  (ECF No. 95-1 at 11.) Defendant argues that this provision gives it the absolute right to approve or disapprove sub-representatives and other personnel.  (ECF No. 76 at 13.)

A party to a contract "does not act in bad faith by asserting or enforcing its legal and contractual rights."  *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125

---

[4]  Most of Plaintiff's allegations are so vague that the Court cannot possibly link them with certainty to evidence in the record.  The Court has nonetheless tried to divine the basis for Plaintiff's claims from the evidence before it.

(Minn. Ct. App. 1998).  However, while the Minnesota Supreme Court does not appear to have addressed the issue, at least one other court has held that "that the Minnesota Supreme Court would require a party to exercise good faith in exercising an unlimited discretionary power over a term of the contract if necessary to effectuate the parties' intent and to save a contract from being held to be illusory."  *White Stone Partners, LP v. Piper Jaffray Companies, Inc.*, 978 F. Supp. 878, 882 (D. Minn. 1997).  Another court applying Minnesota law expanded on this principle, stating: "Countless contracts give one party the discretion to control some aspect of the parties' relationship.  The implied covenant of good faith and fair dealing prevents the party with control from abusing its discretion in a manner that would inflict harm on the vulnerable party and undermine the purpose of the contract."  *BP Products N. Am., Inc. v. Twin Cities Stores, Inc*., 534 F. Supp. 2d 959, 965 (D. Minn. 2007).  The Court finds these cases persuasive, and holds that Defendant could be liable for a breach of the covenant of good faith and fair dealing if it withheld its written approval of employees in bad faith, and in a manner that would inflict harm on Plaintiff or otherwise undermine the purpose of the Agreement.

Plaintiff states in its affidavit that it "provided the names of at least 10 potential hires to my Regional Sales Director, Joe Dobis, as instructed by Sorin, but no action was ever taken.  Most were not even contacted by Sorin, however, Sorin interviewed and attempted to hire some of them (at later dates) directly for Sorin, not Bio Med." (ECF No. 95-2 at 12.)  This evidence could support a breach of Defendant's duty to exercise its discretion reasonably, and indicates that Defendant may have had a bad faith, ulterior motive for refusing to approve Plaintiff's candidates because it wished to hire those candidates itself.  Defendant has presented contrary evidence that it did

indeed hire some of the sub-representatives presented by Plaintiff, which creates a factual dispute on this issue, but does not entirely defeat Plaintiff's claim.  (ECF No. 100 at 4.)  Plaintiff has accordingly met its burden of proving that a material dispute of fact exists as to this claim.

      b.   *Barbados*

Plaintiff alleges that Defendant "thwarted [its] efforts to sell in Barbados at every turn," despite Barbados being one of Plaintiff's sales territories under the Agreement.  (ECF Nos. 95-1 at 18 & 95-2 at 13.)  As a result, Plaintiff was "affirmatively precluded" from selling in Barbados during the term of the Agreement.  (ECF No. 95-2 at 13.)  Defendant responds that it only delayed shipping product to Barbados until it received the necessary regulatory approvals.  (ECF No. 76 at 14.)  A chain of e-mails, however, suggests that Defendant's management had deemed Barbados inconsequential to its sales.  (ECF No. 95-18.)  Plaintiff was allegedly informed by Joseph Dobis, Defendant's "NE Sales Manager," to instead focus his efforts on the U.S. market instead, particularly Philadelphia, and to "forget about Barbados."  (ECF No. 95-2 at 13.)  Dobis sent the following email to another Defendant employee:

> Unlike the 60+ accounts in Philadelphia that are critical to our success, Barbados is insignificant to my overall strategy. Clearly, [Plaintiff] should be focusing on the market in his backyard first.  Regardless, I want to put closure to this.  I would like to be able to send the physician a brief letter outlining the documentation we need in order to bring products to Barbados for implantation.

(ECF No. 95-18 at 9.)  Another e-mail to Dobis asked, "We received a registration from a customer in Barbados . . . [Plaintiff] said they are awaiting final clearance to ship product.  Who is going to cover them?"  Dobis responded, "My opinion is that Barbados

is not a priority (unlike Philadelphia and the 67 or so accounts that are not penetrated).

I recommend that we postpone this individual's participation to a future program . . . ."

(*Id*. at 8.)  Dobis further states in another e-mail, "How many accounts do you think

[Plaintiff] drove by this week in Philadelphia while Sorin wastes time & money on this

sh>+??"  (*Id*. at 20.)

Defendant cites the Agreement which states "no order" is binding until accepted

by Defendant, and argues that Plaintiff has not shown that Defendant ever accepted

any orders from Barbados.  (ECF No. 76 at 24.)  Thus, Defendant argues, Plaintiff

cannot prove a breach of the Agreement.  (*Id*.)  Plaintiff does not, however, phrase its

claim as a breach of an express provision of the contract.  This claim is also

distinguishable from Plaintiff's sub-representatives claim discussed above, because

liability is not predicated solely on Defendant's discretionary approval or disapproval of

orders.  Here, Plaintiff cites evidence suggesting that Defendant did not simply refuse to

accept orders for the Barbados territory, but neglected, in bad faith, to obtain the

regulatory approvals necessary to even allow Plaintiff to present orders for Defendant's

approval.  The e-mails also suggest that Defendant's ulterior motive for doing so was to

garner sales in territories it deemed to be more lucrative than Barbados.  Viewing the

facts in the light most favorable to Plaintiff, Defendant's alleged stall tactics could

support a breach of the duty of good faith and fair dealing because its conduct

prevented Plaintiff from ever pursing sales in its assigned sales territory.

Plaintiff has therefore shown that a material dispute of fact exists as to

Defendant's breach of the covenant of good faith and fair dealing as to this claim.

c.    *Drs. Kutalek and Blumberg*

Plaintiff argues that Defendant "attempted to disavow its promises to allow me to take over two physician accounts (Kutalek and Blumberg) after the previous Sorin reps left the company." (ECF No. 95-2 at 13.) "In Minnesota, the implied covenant of good faith and fair dealing does not extend to actions beyond the scope of the underlying contract." *In re Hennepin Cnty.*, 540 N.W.2d at 503.  The Agreement expressly excludes Drs. Kutalek and Blumberg from Plaintiff's territory. (ECF No. 95-1 at 18; 76 at 11.)  It is not entirely clear when Defendant allegedly promised Plaintiff these accounts.  However, it appears that Plaintiff had pre-agreement discussions with Defendant regarding the re-assignment of Drs. Kutalek and Blumberg to Plaintiff's territory that were allegedly formalized (orally) post-agreement. (ECF Nos. 77-2 at 4-5; 95-2 at 13-14.)  Viewing the evidence in the light most favorable to Plaintiff, the Court finds that a dispute of fact exists as to whether the Agreement was amended to reflect the addition of Drs. Kutalek and Blumberg to Plaintiff's territory, despite their initial exclusion from the Agreement.[5]

However, the Court must still determine whether any oral agreement between the parties could have modified the Agreement given that Plaintiff has not recited any additional consideration exchanged for the amendment, and the existence of a no-oral-

---

[5]  If Defendant promised the territory to Plaintiff before entering into the Agreement, Plaintiff could not rely on these pre-contract representations, which contradict an express term of the Agreement, to support its claim for breach of the covenant of good faith and fair dealing. *Sterling*, 575 N.W.2d at 125.

modification clause in the Agreement.[6] (ECF No. 95-1 at 13.) "A contract not within the Statute of Frauds which is still executory may be orally modified at any time to add, qualify, or delete terms and still be valid and binding upon the original contracting parties. Such modification requires no new consideration, since the consideration from the original contract attaches to and supports the modified contract." *Asbestos Prods., Inc. v. Healy Mech. Contractors, Inc*., 235 N.W.2d 807, 808-09 (Minn. 1975).

The initial term of the Agreement was five years and the parties operated under the Agreement from August 7, 2009 through August 1, 2014. (ECF Nos. 107 at 7; ECF No. 95-1 at 17.) The Agreement was thus within the statute of frauds because by its terms it could not be performed within one year from the date of its execution. *See Cnty. of Polk v. Minn. Dehydrated Vegetables, Inc*., 2000 WL 821656, at *1 (Minn. Ct. App. June 27, 2000); Minn. Stat. § 513.01(1) ("[n]o action shall be maintained . . . upon any agreement, unless such agreement . . . is in writing" if the agreement "by its terms is not to be performed within one year from the making thereof"). Therefore, "[u]nder Minnesota's statute of frauds . . . any modification to [the Agreement] was required to be in writing because the contract was for a five-year term and could not be performed within a year." *Cnty. of Polk*, 2000 WL 821656, at *1. Plaintiff stipulated in the Final Pretrial Order that "[t]he parties did not execute any amendment to the ISR Agreement" and has identified no other writing that purports to alter the parties' contractual

---

[6] The only time Plaintiff's Response mentions Drs. Kutalek and Blumberg is in response to one of Defendant's Statements of Fact. (ECF No. 94 at 12.) Again, the Court has gone deep sea fishing for Plaintiff's arguments which, here, like so many of Plaintiff's arguments, is not actually in the argument section of its brief, but submerged elsewhere. Plaintiff, moreover, cites no law and makes no legal arguments with regard to this claim.

relationship.  (ECF No. 107 at 7.)  Summary judgment will accordingly enter on this portion of Plaintiff's claim.

        d.   *Plaintiff's Territory*

Plaintiff further claims that Mr. Dobis, Defendant's "NE Sales Manager," seriously interfered with its accounts:

> Dobis also went into several of my accounts and negotiated lower prices for Sorin equipment.  This was unheard of in the industry, especially without even informing me of what was going on or including me.  It made it appear as if I had no control and ultimately led to loss of both accounts. Dobis also went behind my back and instructed two of my accounts (Hahnemann Medical and St. Mary's Medical) not to provide purchase orders to me and only to provide the P.O.'s directly to Mr. Dobis at Sorin—in an obvious attempt to interfere in the Territory and eliminate my commissions.

(ECF No. 95-2 at 14.)  If true, these allegations exhibit a classic breach of the duty of good faith and fair dealing.

Defendant denies these allegations and argues this portion of Plaintiff's affidavit is inadmissible hearsay.  It is not.  First, the majority of Plaintiff's affidavit speaks to Mr. Dobis's *actions*, not his statements, thus not implicating the general rule against hearsay.  Second, a statement offered against an opposing party is not hearsay when made "by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).  Plaintiff identifies Mr. Dobis as Defendant's Sales Manager, and he therefore qualifies as Defendant's "agent" for purposes of Rule 801(d)(2)(D).  Mr. Dobis's statements regarding purchase offers and the price of equipment also clearly pertain to a matter within the scope of his employment relationship with Defendant.  The Court therefore rejects Defendant's

objections to the Court's consideration of this evidence.

Defendant also argues that the Agreement emphasizes that "[a]ll prices are subject to change," products may be sold "outside of pricing guidelines," and, after an initial 18 month period, Defendant was allowed to "permanent[ly] recapture" and "solicit and sell products to" any account where Plaintiff had failed to meet its sales quotas. (ECF No. 76 at 23-24.)  Defendant takes the first two provisions out of context.  The first provision reads as follows: "All prices are subject to change and all products are subject to discontinuance, *in each case upon thirty (30) days written notice to Representative*."  (ECF No. 95-1 at 4.) (emphasis added).  Plaintiff's affidavit suggests that it was not provided with written notice of any pricing changes prior to Dobis contacting its accounts.  The second provision states, "The Company reserves the right to provide for alternative commission deductions for sales of products outside of pricing guidelines . . ."  (*Id*.)  This provision deals with commission deductions, not Defendant's ability to make pricing decisions unilaterally.  Finally, the third provision does allow Defendant to recapture Plaintiff's sales territories should it fail to meet its sales quotas in the 18 months following the Agreement's execution.  (*Id*.)  Plaintiff has also admitted that it did not meet its sales quotas for any of the five years under the Agreement. (*Compare* ECF No. 76 at 14, *with* ECF No. 94 at 19.)  However, Plaintiff's affidavit is unclear as to when Dobis allegedly contacted Plaintiff's accounts.  Because Defendant has not presented any conclusive evidence showing that Dobis contacted Plaintiff's accounts only after the recapture period, the Court resolves this factual ambiguity against Defendant.  *Houston*, 817 F.2d at 85.

15

Plaintiff has therefore shown that a material dispute of fact exists as to

Defendant's breach of the covenant of good faith and fair dealing as to this claim.[7]

> e.    *The Damages Provision*

Defendant argues that even if Plaintiff's breach of contract claims are

cognizable, Plaintiff is contractually barred from recovering the damages it seeks.  (ECF

No. 76 at 26.)  The Agreement provides:

> Except in connection with a breach of Sections 7 or 8, or in
> connection with a party's obligations of indemnification as
> set forth in this Agreement, in no event will either party be
> liable to the other for loss of any anticipated revenues,
> profits or good will, or incidental, special, exemplary or
> consequential damages.

(ECF No. 95-1 at 9.)  Plaintiff characterizes the clause as an unenforceable exculpatory

provision; the Court agrees.  (ECF No. 94 at 39.)

Minnesota law allows parties to a contract to protect themselves against liability

resulting from their negligence.  *Schlobohm v. Spa Petite, Inc*., 326 N.W.2d 920, 923

(Minn. 1982).  Exculpatory clauses are, however, "not favored in the law."  *Id*.  "A clause

exonerating a party from liability will be strictly construed against the benefited party.  If

the clause is either ambiguous in scope or purports to release the benefited party from

liability for intentional, willful or wanton acts, it will not be enforced."  *Id*.  Given this clear

---

[7]  Plaintiff makes an additional argument that Defendant acted in bad faith by violating its own "Code of Conduct" that was incorporated into the Agreement.  (ECF Nos. 95-2 at 14; 95-5.)  Defendant allegedly violated the Code when it failed to (1) treat members of the Sorin community with respect; (2) comply with the "letter and spirit of the law"; (3) guarantee "fairness and transparency with transactions with related parties"; and (4) promote "courteous and discreet communications."  (ECF No. 95-2 at 14.)  The Court concludes that these generalities about courtesy and respect included in the Code of Conduct cannot, standing alone, form the basis of a claim for a breach of good faith and fair dealing.

statement of Minnesota law, the Agreement's damages provision cannot be enforced to limit Plaintiff's damages stemming from Defendant's intentional conduct.  The Court accordingly declines apply the provision to Plaintiff's surviving breach of contract claims, each of which involves allegedly intentional, bad faith conduct by Defendant.

Defendant agues that this provision is not an exculpatory provision that relieves the parties from all liability, but rather a limitation of liability clause that specifies the amount of damages exposure each party will have if sued.  (ECF No. 100 at 14-15.) Defendant cites two cases and a Minnesota statute for the principle that such a clause is "well-recognized under Minnesota law," and should be enforced unless it is unconscionable.  (*Id.*; ECF No. 76 at 26-27.)  But the cases cited by Defendant were decided under the Uniform Commercial Code ("UCC"), and the statute is a provision of Minnesota's version of the UCC dealing with damages limitations under that statutory scheme.  *See Mies Equip., Inc. v. NCI Bldg. Sys., L.P.*, 167 F. Supp. 2d 1077, 1084 (D. Minn. 2001); *Int'l Fin. Servs. v. Franz*, 534 N.W.2d 261, 269 (Minn. 1995); Minn. Stat. § 336.2-719(3).  No party has argued that the UCC governs the Agreement and, in fact, it is more properly characterized as a services contract because its predominant purpose is Plaintiff's rendition of distributor services.  *See Spectro Alloys Corp. v. Fire Brick Eng'rs Co.*, 52 F. Supp. 3d 918, 925 (D. Minn. 2014).  More importantly, Defendant has failed to show how the labels given to these provisions amount to something more than a distinction without a difference.  Indeed, what is the difference between a provision that relieves a party from all liability, and one that bars practically all recovery even where liability might be established?  Defendant fails to answer this question, and accordingly the Court will not enforce the damages limitation to bar

17

Plaintiff's remaining claims.

**B.   Fraud**

Plaintiff's fraud claim also contains two components: fraudulent inducement based on Defendant's material misrepresentations, and fraudulent inducement based on its non-disclosure of material facts.  (ECF No. 94.)  Defendant moves for summary judgment on Plaintiff's fraud count in its entirety, arguing that Plaintiff's non-disclosure theory was not timely asserted, and the alleged misrepresentations are not actionable. (ECF Nos. 76; 100.)  The Court addresses these arguments in turn.

1.   <u>Non-Disclosure</u>

Plaintiff argues that Defendant had an "obligation to disclose to Bio Med the pre-existing material and substantial issues that existed with Sorin's financing and the numerous serious impediments that kept it from performing."  (ECF No. 94 at 34.) Plaintiff states that Defendant "represented that it was committed to the US market, yet it was substantially undercapitalized, losing money and projected product rollout" necessary to its success in the U.S.  (*Id*. at 33.)  Defendant argues that Plaintiff should not be allowed to introduce a new and previously undisclosed theory of liability in response to its Motion for Summary Judgment.  (ECF No. 100 at 19.)  Defendant states that "Bio Med's Complaint contains no allegations whatsoever regarding a nondisclosure theory, and Sorin has had no opportunity to take discovery or to prepare a defense on this theory."  (*Id*.)

Federal Rule of Civil Procedure 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Rule 9(b) requires that "a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud[,] and must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (citations omitted); *see also Fornazor Int'l, Inc. v. Huntsman*, No., 2014 WL 6666441, at *2 (D. Utah Nov. 13, 2014) ("[I]n regards to the claim for fraudulent nondisclosure, both parties recognize that this claim is held to a heightened pleading standard under Federal Rule of Civil Procedure 9(b)."). The purpose of the rule is to "afford [the] defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

The Court has reviewed Plaintiff's Complaint and finds that while it alleges that Defendant misrepresented certain facts pre-Agreement, it contains no allegations that Defendant withheld any information. (ECF No. 1.) No reasonable reader of the Complaint would be on notice that Plaintiff had asserted a claim for fraudulent non-disclosure. The Complaint states, "Based on [Sorin's] *assurances, promises and inducements*, as described above, Bio Med signed a final version of the proposed" Agreement. (*Id.* at 4 (emphasis added).) Plaintiff's Second Cause of Action for "Fraud" reinforces the Complaint's general allegations: "[Sorin] committed fraud when it made material misrepresentations as set forth above to induce Bio Med to enter into an agreement with [Sorin]." (*Id.* at 9.) Defendant has also attached discovery materials to the record which indicate that it only asked Plaintiff to "[d]escribe in detail each

19

*representation* made to You by Sorin that You allege induced You to enter into the ISR

Agreement." (ECF No. 77-2 at 3.) This supports Defendant's assertion that it never

had notice that it needed to prepare a defense on Plaintiff's non-disclosure theory.

(ECF No. 100 at 19.)

Finally, the Final Pretrial Order (ECF No. 107) is "the controlling document for

trial," and it, too, lacks any allegations of non-disclosure. *Okland Oil Co. v. Knight*, 92

F. App'x 589, 601 (10th Cir. 2003). It states in relevant part:

> In July 2009 . . . Sorin initiated efforts to recruit Bio Med to
> work as an independent representative for Sorin. During
> discussions about an agreement, Sorin represented that it
> was bringing new products into the US market, that it would
> was [sic] on the rise and dedicated to growing its business,
> and that Sorin would assist in growing BioMed's business for
> Sorin, including hiring sub-reps and technicians, as was a
> standard practice in the industry.
>
> Sorin intentionally misrepresented material facts to Bio Med
> to induce BioMed to enter in the ISR. Sorin represented that
> it was committed to the US market, but it could not have
> been committed to the US market because Sorin was
> undercapitalized, (b) [sic] Sorin materially and repeatedly
> misrepresented the products that it was "imminently"
> bringing to the US market and did not bring those products
> to the US, (c) Sorin was unable and unwilling to provide the
> coverage needed to service patients post operatively in the
> US, as was promised to Bio Med and which was its
> obligation under the ISR, and (d) Sorin was unable to
> provide the support promised to Bio Med and did not provide
> that support.
> . . .
>
> BioMed suffered a minimum of $3,000,000.00 in damages
> as a result of Sorin's misrepresentations and breach of
> contract.

(ECF No. 107). As with the Complaint, the only fraudulent inducement allegations

contained in the Final Pretrial Order are those related to Defendant's affirmative

20

misrepresentations, not its omissions.

The Court finds that at no point during this litigation was Defendant given "fair notice" of a fraudulent non-disclosure claim.  *Farlow*, 956 F.2d at 987.  "Normally a claim or theory that is not adequately raised in the complaint will not be considered" on summary judgment.[8]  *Fuqua v. Lindsey Mgmt. Co.*, 321 F. App'x 732, 734 (10th Cir. 2009); *see also Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997) ("Because Mr. Lawmaster failed to raise the Fifth Amendment claim against the United States in his complaint, we refuse to consider it.").  Plaintiff pleaded no facts that support fraudulent non-disclosure, and the Court therefore concludes that summary judgment should enter on this portion of Plaintiff's fraud claim.

### 2.   Material Misrepresentations

Plaintiff alleges that Defendant made the following material misrepresentations that induced Plaintiff to sign the Agreement: "(a) Sorin was committed to supporting continued sales in the US market (b) the products that Sorin was bringing to the US market which it had no intention to bring to the US, (c) Sorin was able to provide the coverage needed to service patients post operatively in the US,

---

[8]   The Court notes that the Tenth Circuit interprets "the inclusion of new allegations in a response to a motion for summary judgment[] as a potential request to amend the complaint." *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). But "a request to amend may be denied where the new theory would prejudice the moving party." *Id*. at 1212. Defendant makes a persuasive argument that it would be prejudiced if Plaintiff were allowed to proceed with its non-disclosure claim. Defendant never took discovery on this claim, discovery has closed, and a Final Pretrial Order has been entered with trial to commence on December 7, 2015. (ECF Nos. 107, 108.) Furthermore, Plaintiff's Complaint was not amended to assert a non-disclosure theory, and Plaintiff requested no amendment in its Response to Defendant's Motion. *See Fuqua*, 321 F. App'x at 735. In light of these considerations, the Court accordingly concludes that amendment of the Final Pretrial Order is not necessary to "prevent manifest injustice." Fed. R. Civ. P. 16(e).

and (d) Sorin was able to provide the promised support."  (ECF No. 95-2 at 4.)

In Minnesota, a plaintiff claiming fraudulent misrepresentation is required to prove the following elements:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Hoyt Properties, Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 322 (Minn. 2007).

Where, as here, the misrepresentations are promises regarding a future event, the plaintiff must put forth proof that the party making the representation had no intention of performing when the promise was made.  *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000); *Hayes v. Northwood Panelboard Co.*, 415 N.W.2d 687, 690 (Minn. Ct. App. 1987) (requiring "affirmative evidence" that the promisor had no intention to perform).  Thus, the promisor's "subsequent intention to break the promise or failure to fulfill it does not constitute fraud."  *Benson v. Rostad*, 384 N.W.2d 190, 195 (Minn. Ct. App. 1986).  This reflects the "general rule in Minnesota is that broken promises are not actionable as fraud."  *Int'l Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1402 (8th Cir. 1993); *Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (1974) ("It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place.").  Moreover, statements and opinions that are "general and

indefinite" are not actionable representations of fact.  *Martens*, 616 N.W.2d at 747.

Two of the above representations on which Plaintiff relies constitute puffery insufficient to support a fraud claim.  Defendant's alleged commitment "to supporting continued sales in the U.S." and its ability to "provide the promised support" are the kind of "vague generalities that no reasonable person would rely on as assertions of particular facts."  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009).  Plaintiff has provided no additional context for these statements, which lack any substance or concrete details on which a reasonable person would base his decision.

The remaining two representations are likewise not actionable.  The Court accepts that claims of bringing specific products into the U.S. market and willingness to service patients post-operatively are sufficiently definite to support a fraud action.  However, Plaintiff bears the burden of providing affirmative evidence that Defendant had *no intention* of performing at the time the statements were made.  *Martens*, 616 N.W.2d at 747.  Plaintiff references Defendant's alleged undercapitalization and statements from Defendant's Chief Executive Officer, Andre Michel.  (ECF No. 94 at 33-34.)  Michel, based in Defendant's Europe location, was

> really upset that Sorin US was losing money and wanted to find a way to stop the bleeding.  Andre indicated in around 2006 that they (Europe) did not want to keep funding Sorin US. He indicated that Sorin US needed to get to a break-even point NOW.  These were the exact words that Andre Michel used when we discussed this at a NASPE meeting.  Andre asked me how he could get this "albatross" from around his neck and bemoaned the "arm and a leg" it was costing Europe to keep Sorin US afloat.

(ECF No. 95-3 at 4.)  While such evidence suggests a struggling business, it does not indicate that Defendant had no intention of introducing new products or providing post-

23

operative support.   Rather, Plaintiff's evidence relates to Defendant's general financial condition, not its willingness to make good on its promises.   Any additional evidence that Defendant failed to perform post-Agreement has no bearing on the alleged pre-Agreement promises of future action, even if Defendant subsequently formed the intent to break its promises.   *Benson*, 384 N.W.2d at 195.   The Court therefore cannot conclude from the record that Plaintiff has made it "affirmatively to appear that [Defendant] had no intention to perform at the time the promise was made." *Vandeputte*, 216 N.W.2d at 147.   Summary judgment will accordingly enter on Plaintiff's fraudulent misrepresentation claim.[9]

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1) Defendant's Motion for Summary Judgment (ECF No. 79) is GRANTED IN PART;

2) Summary judgment is GRANTED as to Plaintiff's claims for breach of the Agreement's express provisions, but is DENIED as to Plaintiff's claims for breach of the covenant of good faith and fair dealing as described in detail above; and

3) Summary judgment is GRANTED as to Plaintiff's fraud claim in its entirety.

---

[9]  Given this result, the Court need not address Defendant's additional arguments regarding the economic loss rule and the effect of the Agreement's express provisions on any fraud claim.  (ECF No. 100 at 15-20.)

Dated this 17th day of August, 2015.

BY THE COURT:

William J. Martinez
United States District Judge