**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-0154-WJM-CBS

BIO MED TECHNOLOGIES CORPORATION,

    Plaintiff,

v.

SORIN CRM USA, INC., f/k/a ELA MEDICAL, INC.,

    Defendant.

---

**ORDER ON PRETRIAL EVIDENTIARY MOTIONS**

---

Plaintiff Bio Med Technologies Corporation ("Plaintiff" or "Bio Med") brings this action against Defendant Sorin CRM USA, Inc. ("Defendant" or "Sorin") arising out of an agreement under which Plaintiff was to sell Defendant's products. (ECF No. 1.) The only remaining claim is Plaintiff's claim for breach of the covenant of good faith and fair dealing. (ECF No. 109.) This matter is before the Court on two pretrial evidentiary motions: (1) Defendant's Motion to Exclude the Opinions and Testimony of Jon Karraker, brought pursuant to Federal Rule of Evidence 702 ("702 Motion") (ECF No. 110), and (2) Defendant's Motion *in Limine* (ECF No. 117). For the reasons set forth below, the 702 Motion is denied, and the Motion *in Limine* is granted as to any undisclosed damages theories but denied in all other respects.

## I. BACKGROUND

Defendant is a medical device company that develops, manufactures, and sells medical technologies for the treatment of cardiac rhythm disorders. (ECF No. 76 at 2.)

Plaintiff and Defendant executed an Independent Sales Representative Agreement ("Agreement") with an effective date of August 1, 2009.  (*Id*. at 3.)  Under the Agreement, Plaintiff sold cardiac rhythm management products for Defendant.  (*Id*.)  Plaintiff was operated by Jack Oliver, a medical device sales representative, who signed the Agreement on Plaintiff's behalf.  (*Id*.; ECF No. 95-1 at 15.)  Plaintiff filed this action on January 21, 2014, bringing claims of breach of contract, fraud, conversion, and interference with business relations.  (ECF No. 1.)  The Agreement terminated on August 1, 2014 when Defendant provided Plaintiff a non-renewal notice.  (ECF No. 76 at 3.)

On January 30, 2015, the Court granted in part Defendant's Early Motion for Partial Summary Judgment, finding in Defendant's favor as to Plaintiff's conversion and interference with business relations claims.  (ECF No. 73.)  Defendant subsequently moved for summary judgment as to Plaintiff's remaining claims.  (ECF No. 79.)  On August 17, 2015, the Court granted summary judgment in Defendant's favor as to Plaintiff's express breach of contract claim and fraud claim, as well as the portion of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing that relied on the exclusion of Drs. Kutalek and Blumberg from Plaintiff's territory.  (ECF No. 109.)  The Court denied summary judgment as to the remainder of Plaintiff's claim for breach of the covenant of good faith and fair dealing based on a finding that factual disputes existed as to: (1) Defendant's alleged bad faith refusal to approve sub-representatives and technicians; (2) Defendant's alleged bad faith interference with Plaintiff's sales efforts in the Barbados market; and (3) interference by Joe Dobis, Defendant's Sales Manager, in accounts within Plaintiff's assigned sales territory by

way of direct sales and underpricing.  (*Id.* at 8–16.)

Defendant filed its 702 Motion on September 14, 2015.  (ECF No. 110.)  Plaintiff filed a Response (ECF No. 115) and Defendant a Reply (ECF No. 116).  Defendant's Motion *in Limine* (ECF No. 117) was filed on November 2, 2015, and Plaintiff's Response (ECF No. 119) was filed one week later.  Both Motions are fully briefed and ripe for disposition.

## II.  DISCUSSION

**A.    702 Motion**

Defendant's 702 Motion seeks to exclude testimony by Plaintiff's damages expert, Jon Karraker, a certified public accountant.  (ECF No. 110.)  Defendant argues that Karraker's opinions are irrelevant to Plaintiff's sole remaining claim, and are unreliable because they are based on insufficient facts or data and fail to consider alternative causes.  (*Id.*)

1.    <u>Legal Standard</u>

A district court must act as a "gatekeeper" in admitting or excluding expert testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission of expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on a substantial foundation and would tend to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). To establish that the proffered testimony is reliable, the proponent must show that the reasoning or methodology underlying the testimony is valid and is properly applied to the facts in issue. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–94 (1993). While an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*

2. Analysis

Defendant first argues that Karraker's opinions are excludable because they are irrelevant to Plaintiff's sole remaining claim. (ECF No. 110 at 6–9.) Defendant relies on

the Court's Summary Judgment Order (ECF No. 109), arguing that only the three factual disputes identified in the Order remain for trial. Based on this position, Defendant contends that Karraker's opinion is not helpful to the jury because Karraker opines as to damages resulting from all of Plaintiff's allegations, not solely the damages resulting from the three factual bases discussed in the Summary Judgment Order. (ECF No. 110 at 6–9.)

In the conclusion of the Summary Judgment Order, the Court "DENIED [summary judgment] as to Plaintiff's claims for breach of the covenant of good faith and fair dealing as described in detail above." (ECF No. 109 at 24.) The Court's "above" discussion of Plaintiff's claim for breach of good faith and fair dealing began by noting that Plaintiff's opposition brief was imprecise and lacked evidentiary citations, and "[m]ost of Plaintiff's allegations are so vague that the Court cannot possibly link them with certainty to evidence in the record. The Court has nonetheless tried to divine the basis for Plaintiff's claims from the evidence before it." (*Id.* at 8 n.4.) Based on its review of the evidence presented in the briefing on Defendant's Motion for Summary Judgment, the Court identified four factual bases for Plaintiff's claim that were supported by evidence in the record. (*Id.* at 8–16.) The Court concluded that, as to three of the four, there were material factual disputes about Defendant's actions and their timing and motivation that prevented summary judgment. (*Id.*) As to Plaintiff's allegation that Drs. Kutalek and Blumberg should have been added to its territory, however, the Court found no material factual dispute because these doctors were explicitly excluded from Plaintiff's territory under the Agreement between the parties, and it was undisputed that the Agreement was never properly amended in writing. (*Id.*

at 12–14.) As such, the Court granted summary judgment solely on the portion of Plaintiff's good faith and fair dealing claim that relied on Defendant's failure to add Drs. Kutalek and Blumberg to its territory. (*Id.* at 14.)

Given the above recitation, Defendant's reading of the Summary Judgment Order does not comport with the legal standard for summary judgment or with the language of the Order itself. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Finding no issue of material fact as to the portion of the claim based on Drs. Kutalek and Blumberg, the Court granted summary judgment on that portion and denied it as to the remainder of the claim. (ECF No. 109.) Plaintiff's failure to present additional evidence of other factual disputes in the briefing on summary judgment might have been a poor strategic decision, but Plaintiff did not as a consequence waive its right to present such evidence in support of that claim at trial. As such, the Court concludes that Plaintiff is not limited to presenting evidence on the three factual disputes discussed in the Summary Judgment Order, and may litigate its remaining claim in full, with the exception of the portion relying on Drs. Kutalek and Blumberg.

Given the scope of Plaintiff's remaining claim, the Court now considers Defendant's argument that Karraker's opinions are unhelpful to the jury because they are based on allegations that are no longer relevant to the remaining claim. Karraker's Report calculates Plaintiff's losses resulting from Defendant's actions, and states that the following actions were considered:

       Specific Sorin interference includes:

    a.     Dr. Kutalek was not added back to Bio Med accounts when Denny Penny left Sorin.
    b.     Dr. Blumberg was not added back to Bio Med accounts when Kimo Shefte left Sorin.
    c.     St. Mary's Hospital collections interference.
    d.     Hahnemann Hospital pricing and collections interference.
    e.     Christiana Hospital account taken and ultimately lost by Sorin.
    f.     Other accounts taken by Sorin.
    g.     Territory taken by Sorin and given to Andrew Turk and Ron Gerhart.
    h.     Other territory encroachments by Sorin.
    i.     Barbados and Trinidad sales orders not filled by Sorin.

       General Sorin interference includes:

    a.     Not supporting Bio Med in hiring technicians.
    b.     Not supporting Bio Med in hiring sub-reps.
    c.     Not supporting Bio Med with marketing to surgeons.
    d.     Other interference by Sorin.

(ECF No. 115-4 at 4.)  Of these alleged actions, only the first two regarding Drs. Kutalek and Blumberg are clearly not part of the remaining claim pursuant to the Summary Judgment Order.  The allegations regarding interference with hospital accounts and the scope of Plaintiff's territory, the Barbados sales orders, and the failure to hire technicians and sub-representatives were all discussed in the Summary Judgment Order, and the Court found factual disputes for trial as to these bases for Plaintiff's claim.  (*See* ECF No. 109 at 8–16.)  The Order did not discuss the Trinidad sales orders, marketing to surgeons, and "[o]ther interference," but summary judgment was not granted as to these issues.  Therefore, the Court concludes that Karraker's report is unhelpful to the jury only to the extent that the allegations regarding Drs. Kutalek and

Blumberg cannot be removed from the damages projections.

Defendant correctly points out that Karraker's Report does not separately calculate damages flowing from each alleged act. (*See* ECF No. 110 at 7; ECF No. 115-4 at 4.) However, Schedule 6 attached to Karraker's Report does identify component losses related to three of Plaintiff's allegations:

Component Losses – Summary

1. Dr. Blumberg – As much as $370,000 or more sales of Sorin products per year.
2. Dr. Kutalek – As much as $200,000 or more sales of Sorin products per year.
3. Barbados/Trinidad – As much as $360,000 or more sales of Sorin products per year.
4. Component losses will be supplemented and updated after receipt of Sorin documents requested (see Schedule 11).[1]

(ECF No. 115-4 at 12.) Because Karraker did calculate the portion of Plaintiff's projected sales that (at least in his view) was attributable to Drs. Kutalek and Blumberg, and this opinion was properly disclosed to Defendant as part of Karraker's Report, the Court finds that this portion of Karraker's opinion can be updated to reflect the current status of the case. The Court therefore concludes that Karraker's opinion remains relevant to the case, although in order to be admitted at trial, Karraker's calculations must be revised to exclude the portion of the projected sales revenues attributed to Drs. Kutalek and Blumberg as depicted in Schedule 6.

Defendant next argues that, even if relevant, Karraker's opinions are unreliable

---

[1] Schedule 11 lists "Documents Requested from Defendant Sorin," but there is no indication of whether such documents were eventually produced. (ECF No. 115-4 at 17.) Karraker's Supplemental Report does not update the summary of component losses. (*See generally* ECF No. 111-2.)

and unhelpful to the jury because they are based on insufficient facts or data and fail to consider alternative causes of Plaintiff's damages. (ECF No. 110 at 9–15.) Defendant primarily objects to Karraker's reliance on Oliver's statements and opinions of Plaintiff's projected sales, sub-representative commissions, expenses, and compensation of Defendant's in-house and independent sales representatives, arguing that he did not corroborate them with other data sources. (*Id.* at 9–14.) Defendant argues that these were "self-serving opinions and speculation" that cannot properly serve as the basis for expert testimony, and that it is improper for an expert to adopt a party's position wholesale. (*Id.* at 10.)

The Court does not dispute the impropriety of expert testimony that speculates or merely mirrors the legal position of the proponent party. However, Defendant has failed to show that Karraker's opinions are excludable on either basis. Karraker's expertise is in accounting, and his qualifications and methodology—calculating Plaintiff's projected losses by comparing projected and actual revenues—are not challenged here. Defendant's 702 Motion accuses *Oliver* of speculation, not Karraker; Defendant faults Karraker merely for using the data Oliver provided. Similarly, Defendant has not shown that Karraker adopted wholesale a damages calculation Plaintiff provided without performing any analysis himself; at best, Defendant has shown that Karraker performed sound calculations using questionable underlying data. In short, and in the terminology of Rule 702, Defendant does not challenge Karraker's qualifications, whether he used reliable principles and methods, or whether he applied those methods reliably. *Cf.* Fed. R. Evid. 702. Nor does Defendant truly challenge the *sufficiency* of the facts or data on which Karraker relies; instead, Defendant challenges

the *accuracy* of those facts and data. This challenge may provide strong fodder for cross-examination, but it does not make Karraker's opinions unreliable or otherwise excludable. Rather, Karraker's opinions could be helpful to a jury that finds Oliver credible and believes that his statements regarding his business prospects are well-founded based on his experience, and could therefore utilize Karraker's calculations in determining damages.

Defendant also argues that Karraker failed to consider alternative explanations for Plaintiff's losses, citing the advisory committee notes to Rule 702. *See id.*, advisory committee's note ("Courts . . . have found other factors relevant in determining whether expert testimony is sufficiently reliable . . . includ[ing] . . . [w]hether the expert has adequately accounted for obvious alternative explanations."). Defendant argues that there are numerous alternative factors that could have caused Plaintiff's losses, including competition, customer preferences and requirements, product features, and "most obvious[ly]" Oliver's four-year hiatus from medical device sales prior to joining Sorin in 2009. (ECF No. 110 at 14–15.) However, Defendant admits that Karraker discussed this hiatus with Oliver. Defendant merely disapproves of Karraker's explanation as to why he did not believe it caused Plaintiff's losses. The Court rejects these arguments and finds that Defendant has not shown that Karraker's failure to include any of these alternative causes in his report is sufficient to render his calculations unreliable for purposes of Rule 702.

The Court concludes that Defendant's arguments in the 702 Motion go to the weight the jury should afford Karraker's testimony, rather than the admissibility of such testimony. "Vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702 advisory committee's note.  As such, the Court denies the 702 Motion in its entirety, with the admonition that Karraker's opinions at trial must exclude any lost revenue flowing from Drs. Kutalek and Blumberg. Nothing in this Order prevents Defendant from vigorously cross-examining Karraker about the basis for his opinions and the conclusions he draws therefrom.

**B.     Motion *in Limine***

Defendant's Motion *in Limine* challenges four categories of evidence, which the Court will discuss in turn: (1) Karraker's Supplemental Report; (2) any other previously undisclosed damages theories; (3) testimony from former Sorin sales representatives; and (4) evidence of internal communications between Sorin employees regarding Oliver.  (ECF No. 117.)

      1.     <u>Karraker's Supplemental Report</u>

As discussed above, Karraker's initial Report was timely disclosed on September 5, 2014, which was the deadline for such disclosures under the Scheduling Order. (*See* ECF No. 17 at 10.)  Defendant then timely disclosed its Rebuttal Expert Report on October 6, 2014.  (*See* ECF No. 111-1.)  On November 1, 2014, Plaintiff served on Defendant Karraker's Supplemental Report, which disclosed Karraker's informal interviews with four additional former Sorin sales representatives.  (ECF No. 111-2.) Defendant now argues that the Supplemental Report was not a proper supplement, and was instead an untimely expert opinion that must be excluded from evidence.  (ECF No. 117 at 1–4.)

Federal Rule of Civil Procedure 26(a)(2) mandates disclosure of expert testimony via a written report containing a complete statement of the expert's opinions, the bases for them, and the data and exhibits supporting them, as well as supplementation of such disclosures when required by Rule 26(e).  Rule 26(e) imposes an obligation on a party to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect," and such supplementation must be made "by the time the party's pretrial disclosures . . . are due."

Pursuant to Rule 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  The Tenth Circuit has identified four factors for consideration in determining whether the failure to disclose is substantially justified or harmless: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness.  *Id*.

The first question here is whether Karraker's Supplemental Report was proper as a supplement under Rule 26(e), or whether it was instead a new expert opinion that was untimely disclosed.  The Court agrees with Defendant that the Supplemental Report does not correct misleading or false information based on a finding that the initial disclosure was "incomplete or incorrect," Fed. R. Civ. P. 26(e); indeed, the

Supplemental Report does the opposite: it cites additional information to bolster the opinions contained in the initial Report. (*See* ECF No. 111-2 at 2 (noting that, after reviewing additional evidence and information, "my opinions in my report dated September 5, 2014 have not changed. Further, the interviews and depositions provide additional support for my opinions . . . .").) As such, the Supplemental Report was not a proper Rule 26(e) supplement, and was instead an additional expert opinion that was untimely filed two months after the September 5, 2014 deadline.

Accordingly, the next question is whether the untimely Supplemental Report must be excluded from evidence under Rule 37(c), or whether the untimeliness "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). After carefully considering the four *Woodworker's Supply* factors, the Court concludes that substantial justification for the tardy submission of the Supplemental Report exists here, and that as a result said Report need not be excluded. Defendant argues that it was prejudiced by the late disclosure two months after the deadline and two days before Karraker's deposition was scheduled to take place, because it had "no opportunity to seek discovery of these non-parties, to have its rebuttal expert opine on the late-disclosed information, or to adequately prepare to depose Karraker on the new bases in the Supplemental Report." (ECF No. 117 at 3.) Defendant also argues that "curing this prejudice would require setting a new rebuttal expert deadline and reopening fact discovery at great expense to Sorin," which would disrupt the upcoming trial. (*Id.*)

Plaintiff argues that its untimeliness was justified because the identities of the four former Sorin sales representatives were not disclosed until the depositions of certain Sorin management personnel in September and October 2014, and that

13

Defendant continued to produce documents as late as December 5, 2014, once the parties' discovery disputes were resolved. (ECF No. 119 at 1–2.) While this does not automatically excuse the Supplemental Report's untimeliness, the Court finds that Plaintiff's explanation demonstrates a lack of bad faith or willfulness, one of the factors for consideration under *Woodworker's Supply*.

As for the prejudice or surprise to Defendant and ability to cure, the Court rejects Defendant's argument that the Supplemental Report's untimeliness deprived it of discovery opportunities. The Supplemental Report was disclosed four days prior to the discovery cut-off and two days prior to Karraker's deposition, and Defendant could have moved to extend discovery, to reschedule Karraker's deposition, or to convene a second deposition of Karraker in light of the Supplemental Report. Defendant declined to do so despite ample opportunity, as the Final Pretrial Conference was not scheduled for four more months (it ultimately took place on June 3, 2015, *see* ECF No. 106), and no trial date had yet been set. The Court further notes that, at a hearing on Plaintiff's Motion to Compel, the discovery deadline was extended to January 9, 2015 for Plaintiff to take Defendant's deposition, but Defendant sought no such extension. If timely sought, these remedies would not have disrupted the trial.

To the extent that Defendant was prejudiced by the late disclosure, that prejudice was sufficiently minimal that Defendant chose not to mitigate it through seeking a minor extension of discovery. This minimal prejudice to Defendant does not defeat the remaining factors under *Woodworker's Supply*, which weigh in favor of finding Plaintiff's untimeliness substantially justified. Consequently, the Court finds that the opinions in the Supplemental Report need not be excluded under Rule 37(c), and

the Motion *in Limine* is denied in that respect.

    2.    <u>Undisclosed Damages Theories</u>

Defendant argues that, apart from the damages theory presented through Karraker's testimony, Plaintiff has not disclosed any other damages theories, and therefore any evidence of such undisclosed theories must be excluded. (ECF No. 117 at 4–5.) Surprisingly, Plaintiff has completely failed to discuss this portion of the Motion *in Limine* in its Response. (*See* ECF No. 119.) Accordingly, the Court concludes that Plaintiff has confessed this portion of the Motion. The Court therefore grants this portion of the Motion *in Limine* and will exclude from evidence at trial any evidence of Plaintiff's damages based on a theory that was not previously disclosed to Defendant.

    3.    <u>Former Sales Representative Testimony</u>

Defendant moves to preclude three former Sorin sales representatives from testifying at trial, arguing that their testimony will be irrelevant to Plaintiff's remaining claim and that evidence of other sales representatives' experiences would impermissibly suggest that Plaintiff's experience was or should have been similar. (ECF No. 117 at 5–6.)

Defendant admits that the evidentiary bar for relevance is extremely low: evidence is relevant if it has "any tendency" to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. The Court is unpersuaded that the testimony of these witnesses fails to meet this standard. Plaintiff asserts that these witnesses' testimony will provide information regarding, among other things, the "financial effects of Sorin's actions on Plaintiff and Sorin's sales representatives," and argues that the witnesses' testimony will provide evidence in

support of damages. (ECF No. 117 at 6; ECF No. 119 at 4.) This suffices for relevance under Rule 401.

Defendant also argues that this testimony should be excluded under Rule 403, because it would impermissibly suggest that Plaintiff's experiences were similar to those of the witnesses. (ECF No. 117 at 6.) The Court has little difficulty rejecting this argument. Like Plaintiff, the challenged witnesses served as sales representatives for Defendant, and the extent to which their experiences differed based on territories, customers, or contracts can be explored in cross-examination. Defendant's Motion *in Limine* does not support a finding that the risk of misleading the jury substantially outweighs the probative value of this evidence for damages purposes, which is the relevant legal standard. Fed. R. Evid. 403.

Accordingly, the Court denies the Motion *in Limine* as to the testimony of these three former sales representatives.

4.   Internal Communications

Finally, Defendant moves to exclude from evidence four exhibits, each of which is an e-mail between Sorin personnel that contains a disparaging reference to Oliver. (ECF No. 117 at 7–8.) Defendant argues that these communications are irrelevant to Plaintiff's claim because the subject matter of the e-mails is unrelated to the parties' performance under the Agreement, and that the introduction of this evidence would only improperly influence the jurors' emotions, making it excludable under Rule 403. (*Id.*)

Plaintiff argues that these e-mails, sent by Sorin personnel Joe Dobis (Sales Manager) and Tim Dougherty (Vice President of Sales), reflect Defendant's negative attitude toward Oliver and support Plaintiff's claim that Defendant was unwilling to work

with Plaintiff in good faith.  (ECF No. 119 at 3.)  The Court agrees that this evidence is relevant under Rule 401.

As to Rule 403, Defendant cites numerous cases excluding evidence that unduly suggested to the jury that they make a decision based on emotion.  (ECF No. 117 at 8.)  However, none of the cited cases are analogous; one excluded a grand jury report that applied a different standard of proof regarding a homicide, another excluded a phone conversation suggesting the plaintiff brought suit solely to scare off the defendant, and a third case discussed evidence that a gunshot victim died, deferring ruling on the Rule 403 argument until trial.  (*Id.* (citing cases).)  The Court is particularly disconcerted by Defendant's attempt to support its argument with a citation to an order in a prior case before the undersigned that excluded evidence of anonymous internet surveys under Rule 403 because, to the extent that the surveys were non-hearsay, they contained unidentified customer opinions about the defendant's products that could prejudice the defendant, confuse the issues, and waste time because the evidence was duplicative.  (*Id.* (citing *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 2014 WL 1319361, at *5 (D. Colo. Apr. 2, 2014)).)  None of these cases involved evidence remotely close to the exhibits at issue here, nor were any of the court rulings on point.

The Court concludes that Defendant has failed to show that any of the Rule 403 dangers substantially outweighs the probative value of this evidence, and therefore the Motion *in Limine* is denied in this respect.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1) Defendant's Motion to Exclude the Opinions and Testimony of Jon Karraker (ECF No. 110) is DENIED;

2) Defendant's Motion *in Limine* (ECF No. 117) is GRANTED IN PART and DENIED IN PART; and

3) Plaintiff shall be precluded from presenting evidence of any damages theory not previously disclosed.

Dated this 19th day of November, 2015.

BY THE COURT:

William J. Martinez
United States District Judge