IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 14-cv-0154-WJM-CBS

BIO MED TECHNOLOGIES CORPORATION,

     Plaintiff,

v.

SORIN CRM USA, INC., f/k/a ELA MEDICAL, INC.,

     Defendant.

---

## ORDER ON POST-TRIAL MOTIONS

---

Plaintiff Bio Med Technologies Corporation ("Plaintiff" or "Bio Med") brought this action against Defendant Sorin CRM USA, Inc. ("Defendant" or "Sorin") arising out of an agreement under which Plaintiff was to sell Defendant's products as an independent contractor.  (ECF No. 1.)  A five-day jury trial in this case commenced on December 7, 2015.  (ECF Nos. 161–165.)  A verdict was reached on December 11, 2015, in which the jury found in favor of Defendant.  (ECF No. 169.)  Final Judgment was entered on December 14, 2015.  (ECF No. 172.)

This matter is before the Court on four post-trial motions: (1) Defendant's Motion for Reasonable Attorneys' Fees and Non-Taxable Costs ("Fee Motion") (ECF No. 175); (2) Defendant's Motion to Join Jack Oliver as an Additional Party Pursuant to Fed. R. Civ. P. 21 ("Joinder Motion") (ECF No. 177); (3) Plaintiff's Motion for Judgment Notwithstanding Verdict ("JNOV Motion") (ECF No. 184); and (4) Plaintiff's Motion for New Trial Pursuant to Rule 59 ("New Trial Motion") (ECF No. 185).  For the reasons set

forth below, the Fee Motion is granted in part and denied in part, and the Joinder

Motion, JNOV Motion, and New Trial Motion are all denied.

## I. BACKGROUND

Defendant is a medical device company that develops, manufactures, and sells

medical technologies for the treatment of cardiac rhythm disorders. (ECF No. 76 at 2.)

Plaintiff and Defendant executed an Independent Sales Representative Agreement

("Agreement") with an effective date of August 1, 2009. (*Id*. at 3.) Under the

Agreement, Plaintiff sold cardiac rhythm management products for Defendant. (*Id*.)

Plaintiff was operated and owned solely by Jack Oliver, a medical device sales

representative, who signed the Agreement on Plaintiff's behalf. (*Id*.; ECF No. 95-1 at

15.) Plaintiff filed this action on January 21, 2014, bringing claims for breach of

contract, fraud, conversion, and interference with business relations. (ECF No. 1.) The

Agreement terminated on August 1, 2014 when Defendant provided Plaintiff a non-

renewal notice. (ECF No. 76 at 3.)

On January 30, 2015, the Court granted in part Defendant's Early Motion for

Partial Summary Judgment, finding in Defendant's favor as to Plaintiff's conversion and

interference with business relations claims. (ECF No. 73.) Defendant subsequently

moved for summary judgment as to Plaintiff's remaining claims. (ECF No. 79.) On

August 17, 2015, the Court granted summary judgment in Defendant's favor as to

Plaintiff's express breach of contract claim and fraud claim, as well as the portion of

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing that

relied on the exclusion of Drs. Kutalek and Blumberg from Plaintiff's territory. (ECF No.

2

109.)  The Court denied summary judgment as to the remainder of Plaintiff's claim for breach of the covenant of good faith and fair dealing based on a finding that material factual disputes existed.  (*Id.* at 8–16.)

A jury trial on Plaintiff's good faith and fair dealing claim commenced on December 7, 2015.  (ECF Nos. 161–165.)  On December 11, 2015, the jury found in favor of Defendant.  (ECF No. 169.)  Final Judgment was entered on December 14, 2015.  (ECF No. 172.)  The Fee Motion and Joinder Motion were filed on December 28, 2015 (ECF Nos. 175, 177), and the JNOV Motion and New Trial Motion were filed on January 11, 2016 (ECF Nos. 184, 185).  All four motions are fully briefed and ripe for disposition.

## II.  DISCUSSION

### A.    Plaintiff's Motions

Plaintiff's two motions both seek relief based on asserted errors by the Court with respect to Plaintiff's breach of contract claim and fraudulent inducement claim.  (ECF Nos. 184, 185.)  The Court granted summary judgment as to both of these claims in its order dated August 17, 2015 ("Summary Judgment Order").  (ECF No. 109.)

#### 1.    JNOV Motion

Plaintiff brings its JNOV Motion pursuant to Federal Rule of Civil Procedure 50, seeking judgment in Plaintiff's favor as to its claim for breach of contract—dismissed at summary judgment—based on Defendant's failure to provide product in Barbados and its failure to provide post-implant technical support.  (ECF No. 184.)

3

As a procedural matter, Plaintiff's JNOV Motion is utterly perplexing.  The plain language of Rule 50(a) permits judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial," and notes that a motion under that rule "may be made at any time before the case is submitted to the jury."  As such, this is patently not a Rule 50(a) motion, and Plaintiff made no Rule 50(a) motion at trial.

Under Rule 50(b), the Court may consider a renewed Rule 50(a) motion after trial.  Fed. R. Civ. P. 50(b).  However, "[a] party may not circumvent Rule 50(a) by raising for the first time in a post-trial motion issues not raised in an earlier motion for directed verdict."  *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000) (citing *FDIC v. United Pac. Ins. Co.*, 20 F.3d 1070, 1076 (D.C. Cir. 1994)); *see also Marshall v. Columbia Lea Regional Hosp.*, 474 F.3d 733, 738 (10th Cir. 2007) (holding that a "pre-verdict Rule 50(a) motion" is "a prerequisite to a post-verdict motion under Rule 50(b)"); 9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2537, at 603–04 (3d ed. 2008) ("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion, because the former is conceived of as only a renewal of the latter. . . . [T]he case law makes it quite clear that the movant cannot assert a ground that was not included in the earlier motion."); Fed. R. Civ. P. 50, advisory committee's note ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.").

As Plaintiff made no Rule 50(a) Motion, the Court finds that no Rule 50(b) Motion from Plaintiff can be considered.  The JNOV Motion is therefore denied as procedurally improper.

2.    <u>New Trial Motion</u>

Plaintiff's New Trial Motion is brought pursuant to Rule 59.  (ECF No. 185.) Plaintiff does not cite which subsection of Rule 59 it refers to, but the only subsection under which the Court can grant a new trial after a jury trial on a party's motion is Rule 59(a)(1)(A).  That subsection permits the Court to grant a new trial, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."

Plaintiff seeks a new trial based on four assigned errors of the Court: (1) granting summary judgment on the breach of contract claim; (2) not instructing the jury on Defendant's duty to provide post-implant patient checks; (3) not instructing the jury on rules governing contract interpretation, leading to jury confusion regarding which party is obligated to provide post-implant patient checks; and (4) granting summary judgment on the fraudulent inducement claim.  (ECF No. 185 at 2–3.)

As to the second and third arguments regarding jury instructions, the Court first notes that Plaintiff appears to have misread the Court's Summary Judgment Order regarding Plaintiff's allegations on Defendant's technical support obligations under the Agreement.  While Plaintiff asserts, erroneously, that "the summary judgment ruling prior to trial found that BioMed was responsible for providing all technicians and sub-reps for all patient implants and checks," the Summary Judgment Order in fact stated only that the Agreement did not expressly require *Defendant* to provide post-implant patient checks.  (*See* ECF No. 109 at 5 ("The Agreement states that Plaintiff 'shall be responsible for providing any technical service representatives as may be necessary for [Plaintiff] to provide adequate support and coverage in the Territory.'  This provision

5

speaks only to Plaintiff's technical service obligations, not Defendant's, and is therefore unambiguous as to the parties' duties in this regard. . . . Thus, to the extent Plaintiff is asking the Court to impose an obligation on Defendant that does not exist in the Agreement, it declines to do so." (internal citations omitted)).)  That finding applied to Plaintiff's breach of contract claim insofar as it alleged an express breach of contract based on Defendant's alleged failure to provide post-implant patient checks.  Because the parties' respective obligations under the implied covenant of good faith and fair dealing were not dependent solely on express contractual provisions, the Court permitted the parties to discuss this matter at trial.  As such, Plaintiff is incorrect that it was not permitted to explore this issue further at trial.[1]

Regardless of this misunderstanding, Plaintiff has failed to show that the Court's failure to instruct the jury as to post-implant patient checks or contract interpretation warrants a new trial.  Plaintiff did not offer any proposed jury instructions on either of these issues, nor did Plaintiff object at trial to the Court's final set of jury instructions, notwithstanding the opportunity it was provided to do so at the charging conference phase of trial.  Plaintiff's assertion that it "was not afforded the opportunity to present jury instructions on the issue" is flatly erroneous.  (ECF No. 185 at 3.)  "In this circuit, to comply with Rule 51 [regarding assignment of error in a jury instruction,] a party must

---

[1] As such, the Court rejects Plaintiff's assertion in its reply in support of the New Trial Motion that it did not waive its objection by not proposing these jury instructions because such proposal would have been futile.  (ECF No. 192 (citing *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1172 (10th Cir. 2003)).)  *Abuan* held that a party did not show futility of proffering a jury instruction when it merely stated its legal position in its summary judgment briefing but did not inform the court that a particular jury instruction was necessary.  353 F.3d at 1173.  Plaintiff's position here is identical, and thus Plaintiff has not established futility.

both proffer an instruction and make a timely objection to the refusal to give a requested instruction." *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1172 (10th Cir. 2003). Plaintiff has failed to do so here, and the Court sees no plain error in the absence of these instructions. Accordingly, the Court denies Plaintiff's request for a new trial based on the failure to properly instruct the jury.

As to Plaintiff's first and fourth arguments regarding the Court's summary judgment ruling, Plaintiff's briefing is once again procedurally bizarre. As the Court granted summary judgment on the breach of contract and fraudulent inducement claims, no jury trial took place on those claims; as such, no "new trial" may be had either. *See* Fed. R. Civ. P. 59(a)(1)(A) (new trial may be granted "after a jury trial"). Perceiving this, Defendant has argued in its response that perhaps as to these claims, Plaintiff intended to seek alteration or amendment of the judgment under Rule 59(e). (ECF No. 187 at 5–9.) Plaintiff's reply adopts this proposal, now stating that its motion is brought under Rule 59(a) "as well as Fed. R. Civ. P. 59(e)," but the entirety of the reply seeks a new trial and never applies the substantive analysis required for a Rule 59(e) motion to alter or amend the judgment. (*See* ECF No. 192 at 1.)

To support a motion to alter or amend the judgment, a party must show "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Though Plaintiff does not point to any change in the law or new evidence, its New Trial Motion can conceivably be read as asserting that the Court's Summary Judgment Order constituted clear error as to the breach of contract and fraudulent inducement claims. Regardless, the Court finds no

7

clear error here.

Plaintiff's argument on its breach of contract claim relies on an allegation of "fundamental breach" based on Defendant's failure to provide product when Plaintiff secured sales in Barbados, but as the Court found in its Summary Judgment Order, Plaintiff never cited an express provision of the contract that Defendant breached in so doing.  (*See* ECF No. 109 at 5 n.1, 10–11.)  The Court concluded in the Summary Judgment Order that Plaintiff's claim regarding Barbados was not an express breach of the Agreement, but rather an alleged breach of the implied covenant of good faith and fair dealing with respect to the inclusion of Barbados in Plaintiff's sales territory.  (*Id.* at 10–11.)  That claim was submitted to the jury, which returned a verdict for Defendant. The Court finds no clear error in the jury's decision, and declines to amend the judgment or order a new trial based on the evidence regarding Barbados.

Regarding the fraudulent inducement claim, Plaintiff's entire argument is as follows: "The evidence at trial was clear that Sorin misled BioMed, as well as other reps, concerning its new products."  (ECF No. 185 at 6.)  The Court first notes that the evidence at trial in this regard was far from uncontradicted.  Nevertheless, even assuming the truth of this assertion, it does not establish Plaintiff's fraudulent inducement claim.  As the Court held in its Summary Judgment Order, "Plaintiff bears the burden of providing affirmative evidence that Defendant had *no intention* of performing at the time the statements were made."  (ECF No. 109 at 23 (emphasis in original).)  Even if Defendant misled Plaintiff by promising new products, Plaintiff failed to present evidence, both at trial and on summary judgment, showing that Defendant did so without any intention of complying with such promises, rather than merely

8

negligently.  As such, the Court finds no clear error in its ruling on Plaintiff's fraudulent inducement claim, and denies the New Trial Motion in that respect.

Plaintiff's New Trial Motion is both procedurally improper and fails on the merits. The Court therefore denies it in its entirety.

**B.     Defendant's Motions**

Defendant's Fee Motion and Joinder Motion together seeks two forms of relief: (1) an award of fees and non-taxable expenses pursuant to a provision of the Agreement, and (2) an order piercing Bio Med's corporate veil such that Jack Oliver might satisfy the fees and costs award, and joinder of Jack Oliver as a party to that end. (ECF Nos. 175, 177.)  While the Fee Motion includes references to both of these goals, the Court will discuss the two issues separately.

1.     <u>Fees and Expenses</u>

a.     *Entitlement to Fees and Expenses*

As a preliminary matter, Defendant must demonstrate that it is entitled to an award of attorneys' fees and non-taxable expenses.  Defendant relies on a fee-shifting provision in the Agreement, which states, "If the Company prevails in any litigation relating to this Agreement, the Representative shall pay the Company, in addition to any other damages awards, its reasonable costs and attorneys' fees."  (ECF No. 95-1 § 9.02.)  Defendant contends that such unilateral fee-shifting provisions are enforceable under Minnesota law, which is the applicable substantive law pursuant to the Agreement's choice of law provision.  (*Id.* § 14.06; *see* ECF No. 109 at 3.)

Plaintiff argues that Defendant is not entitled to attorneys' fees or expenses because: (1) Defendant did not assert a claim for fees in its Answer or in the Final

Pretrial Order and its belated request should therefore be denied; (2) Defendant did not meaningfully confer with Plaintiff regarding the Fee Motion pursuant to D.C.COLO.LCivR 7.1(a); (3) the fee-shifting provision in the Agreement is ambiguous, and it does not apply to the good faith and fair dealing claim that was tried; and (4) Defendant should be barred from recovering fees and expenses because it has unclean hands.  (ECF No. 188.)  Notably, Plaintiff does *not* argue that the fee-shifting provision is unenforceable under Minnesota law, or that any other substantive law applies to its interpretation or application.

First, the Court is not persuaded that a request for fees and expenses as a prevailing party pursuant to a contractual provision must be pleaded as a claim or counterclaim, or that Defendant's Fee Motion is at all untimely.  Plaintiff fails to cite any authority holding as much.  As Defendant points out, Federal Rule of Civil Procedure 54(d)(2)(A) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Plaintiff has not provided any such substantive law applicable here, nor is the Court aware of any.  Furthermore, such a fee motion is appropriately made "no later than 14 days after the entry of judgment."  Fed. R. Civ. P. 54(d)(2)(B)(i).  The Court concludes that Defendant's Fee Motion was procedurally proper and timely.

The Court also rejects Plaintiff's argument that Defendant's conferral failed to comply with this District's Local Rules.  Plaintiff admits that Defendant's counsel advised Plaintiff's counsel of Defendant's intention to file the Fee Motion, and Plaintiff's counsel indicated that Plaintiff opposed any fee award.  (ECF No. 188 at 2.)  The

purpose of the duty to confer is to avoid unnecessary filings when the issue could have been resolved without motion practice.  *See* D.C.COLO.LCivR 7.1(a).  It is undisputed that Plaintiff indicated that it opposed Defendant's Fee Motion regardless of the specific amounts requested, and the Court concludes that no further conferral was required.

As to the fee-shifting provision itself, the Court fails to see any ambiguity in the language as applied to the claim that was tried.  The Agreement provides that, if Defendant prevails in "any litigation relating to this Agreement," it shall be entitled to receive an award of its reasonable attorneys' fees and costs.  (ECF No. 95-1 § 9.02.)  Plaintiff's argument suggests that "relating to" is ambiguous because, if read extremely narrowly, it encompasses only litigation based on an express breach of the Agreement itself.  In the Court's view, however, it would be patently unreasonable to rely on such a cramped reading of the Agreement to find the fee-shifting provision inapplicable here.  The claim for breach of the implied covenant of good faith and fair dealing that was tried in this case was not explicitly pleaded as an independent claim, but was found by the Court, as a matter of Minnesota law, to be implied in Plaintiff's breach of contract claim.  (ECF No. 109 at 6–7 ("'Thus, an alleged violation of the implied covenant of good faith cannot form the basis for an independent tort action or even its own cause of action.'" (quoting *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 673–74 (7th Cir. 2013)))).)  The Court has already held that the good faith and fair dealing claim that was tried before a jury arose directly out of the contract at issue between the parties.  Under any reasonable reading of the fee-shifting provision in the Agreement, the trial in this case was litigation "relating to" the Agreement.  Accordingly, the Court finds that the fee-shifting provision applies here.

Finally, the Court rejects Plaintiff's argument that Defendant may not recover fees and expenses because it has unclean hands.  "The equitable defense of unclean hands, encapsuled in the maxim 'one who comes into equity must come with clean hands,' is premised on withholding judicial assistance from a party guilty of unconscionable conduct."  *Fred O. Watson Co. v. U.S. Life Ins. Co.*, 258 N.W.2d 776, 778 (Minn. 1977).  "A party 'may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others.'"  *Peterson v. Holiday Recreational Indus., Inc.*, 726 N.W.2d 499, 505 (Minn. Ct. App. 2007) (quoting *Johnson v. Freberg*, 228 N.W. 159, 160 (Minn. 1929)).

Here, Plaintiff argues—confusingly, with reference to Maryland caselaw rather than that of Minnesota—that Defendant's hands are unclean because it entered into the Agreement without the financial ability to perform, without the intention of fulfilling pre-contractual promises to provide new products, and with no ability to supply products to Barbados.  (ECF No. 188 at 9–10.)  However, Plaintiff presented evidence in support of all three of these allegations in the trial of Plaintiff's good faith and fair dealing claim, and the jury found in favor of Defendant, concluding that no breach of the implied covenant of good faith and fair dealing had occurred.  Plaintiff's generalized allegations do not constitute evidence that Defendant's conduct, or the result thereof, is unconscionable under Minnesota law.  *See Peterson*, 726 N.W.2d at 505.

Furthermore, while the implied covenant claim is rooted in equity, Defendant's request to enforce the fee-shifting provision in the Agreement is strictly contractual.  Even assuming that Defendant acted wrongfully, Plaintiff has not demonstrated that an

award of fees and costs pursuant to the Agreement is an equitable remedy that would be barred by unclean hands under Minnesota law.  Thus, Plaintiff has failed to show that the Court may not award fees under the express fee-shifting provision in the Agreement between the parties.

The Court concludes that Defendant is entitled to an award of reasonable fees and expenses in accordance with the Agreement.

b.    *Legal Standard*

A party seeking an award of attorneys' fees and non-taxable expenses must demonstrate that the fees it seeks are reasonable.  *See Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995).  Therefore, in justifying such an award, counsel must make a good faith effort to exclude hours or expenses that are "excessive, redundant or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  Generally, the starting point for any calculation of a reasonable attorneys' fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017–18 (10th Cir. 1996).

To determine the number of hours reasonably expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment.  *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).  Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed.  *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).  The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion.

*Hensley*, 461 U.S. at 436–37.

As for the hourly rate, the Tenth Circuit has indicated that "the court must look to 'what the evidence shows the market commands'" for analogous litigation. *Burch v. La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case*, 157 F.3d at 1255). The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Ellis*, 163 F.3d at 1203.

    c.    *Fees*

Defendant calculates its lodestar at $493,622.50, based on its attorneys' hourly rates multiplied by their respective number of hours billed, as follows:

| Name | Hourly Rate | Number of Hours | Subtotal |
|---|---|---|---|
| Jared B. Briant | $405 | 581.5 | $235,507.00 |
| Jennifer L. Sullivan | $414 | 146.0 | $60,444.00 |
| Katie A. Feiereisel | 2014: $261<br>2015: $281 | 661.0 | $17,921.50 |
| Margaret M. Zylstra | $125 | 143.6 | $17,950.00 |
| | **TOTAL:** | **1,532.1** | **$493,622.50** |

Plaintiff challenges both the hourly rates and the number of hours billed, arguing that both are excessive. (ECF No. 188 at 5–8.) As to hourly rates, Plaintiff does little more than recite the attorneys' legal experience and their billed rate and argue that these rates are too high, citing by way of comparison a single motor vehicle insurance case tried in 2013 in which the opposing party did not appear to dispute the plaintiff's counsel's rates of $300 and $200 per hour for attorneys with experience of 22 years and eight years, respectively. (*Id.* at 7 (citing *Etherton v. Owners Ins. Co.*, 82 F. Supp.

3d 1190, 1200 (D. Colo. 2015)).)  In finding that these rates were reasonable, the court in *Etherton* quoted from other similar cases in which experienced litigators were compensated at $400 and $405 per hour.  82 F. Supp. 3d at 1200.  The Court finds that this case does not provide reason to reduce counsel's rates.

In support of its motion, Defendant provides data from the National Law Journal's 2014 Survey of Law Firm Economics to support its argument that its rates are well within the average range for the Denver market.  (ECF No. 175 at 9–10.)  The Court agrees with Defendant that, in general, counsel's rates are reasonable.  The only rate that gives the Court pause is that of Ms. Feiereisel, a 2012 law graduate, who billed a rate of $261 per hour in 2014 (with two years of experience) and $281 in 2015 (with three years of experience).  Based on the Court's own experience and understanding of the Denver market, these rates are high given Ms. Feiereisel's limited experience.  However, the Court notes that Defendant's effective motions practice in this case was largely Ms. Feiereisel's responsibility, which was part of Defendant's exercise of billing judgment, and consequently finds that a relatively high billing rate is not unwarranted.  The Court therefore finds that Ms. Feiereisel's 2014 billing rate of $261 per hour is reasonable, and will reduce her 2015 billing rate to the same number.  As a result of this reduction, the lodestar is decreased to $486,422.50.

As to the number of hours, Plaintiff argues that Defendant's billing was excessive due to overstaffing, resulting in an "'army' of rotating personnel [that] inevitably led to duplication of effort."  (ECF No. 188 at 6.)  Plaintiff also raises concerns regarding redacted portions of Defendant's invoices, which prevent it from determining whether those portions were reasonable, as well as a dispute over Defendant's privilege log that

15

was ultimately resolved in a mediation Plaintiff had suggested months earlier.  (*Id.* at 7.)

Defendant easily resolves two of these three concerns, pointing out that it did in fact

utilize additional attorneys on this case, but that it seeks compensation for only three of

them and one paralegal, and that it does not seek reimbursement for any of the entries

that are redacted.  (ECF No. 190 at 7.)  These arguments from Plaintiff therefore do not

provide a basis for reducing Defendant's billed hours.

As to the privilege log, Defendant does not challenge Plaintiff's characterization

of this dispute, but notes that the mediator ultimately ruled in Defendant's favor.  (*Id.* at

7–8.)  The Declaration of Jared B. Briant, Defendant's lead counsel, further notes that

Defendant does not seek compensation for its expenses in using this mediator.  (ECF

No. 175-1 at 16.)  Despite Defendant's ultimate success on this issue with a mediator,

the Court finds merit in Plaintiff's argument that Defendant unnecessarily prolonged the

privilege log dispute by deferring the ultimate decision to seek mediation.  The Court

has identified approximately 30 hours Mr. Briant billed in August and September 2014

regarding the privilege log dispute.  (*See* ECF No. 175-5 at 29–34.)  This amount will be

reduced by half to reach a reasonable fee for Defendant's handling of the privilege log

dispute, such that Mr. Briant's total billed hours will be reduced by 15.

Plaintiff also argues that Defendant's counsel engaged in block billing, which

prevents Plaintiff and the Court from being able to assess whether the billed hours were

reasonable.  (ECF No. 188 at 8.)  "So-called block billing consists of attorneys recording

large blocks of time for tasks without separating the tasks into individual blocks or

elaborating on the amount of time each task took.  Use of this rather imprecise practice

may be strong evidence that a claimed amount of fees is excessive."  *Flying J Inc. v.*

*Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009).  However, the determination of whether a fee is excessive remains in the Court's discretion.  *Id.*

In response to Plaintiff's argument, Defendant points out that block billing is not prohibited, and that the time blocks on Defendant's invoices are accompanied with sufficiently detailed narrative descriptions to permit scrutiny.  (ECF No. 190 at 8.)  The Court agrees that block billing is not impermissible, but even with detailed narrative descriptions, it makes it more difficult to determine whether the billed hours are reasonable if the narrative does not break down the hours by task.  *Cf. Flying J Inc.*, 322 F. App'x at 617 (10th Cir. 2009) (holding that "the decision whether block billing indicates an unreasonable claim should remain with the district court who should be allowed to exercise its discretion accordingly").  The Court has reviewed Defendant's billing entries, and agrees that their lack of clarity warrants some reduction of hours. The Court will therefore reduce Mr. Briant's billed hours by 10 to account for this.

After the above reductions, the Court will award Defendant a fee of $476,297.50, which the Court finds is a reasonable fee to take this case to trial.

d.    *Expenses*

On January 7, 2016, the Clerk of Court taxed costs against Plaintiff in the amount of $20,046.84.  (ECF No. 178.)  Defendant now seeks reimbursement for two categories of non-taxable expenses: (1) $17,184.37 in online legal research, and (2) $47,320.00 in expert fees for its accounting expert.  (ECF No. 175 at 11–13.)

As to the expert fees, Defendant seeks compensation for its expert's time spent reviewing Plaintiff's expert report, preparing a rebuttal expert report, and preparing and testifying at trial.  (ECF No. 175-1 at 16.)  The total request of $47,320.00 is comprised

17

of 41.5 hours of Ms. McCloskey's work at $450 per hour, and 84.25 hours of work by Patrice Parsons, Ms. McCloskey's associate, at $340 per hour.  (ECF No. 175-6.) Plaintiff argues that this amount is excessive because Ms. McCloskey was not even deposed, and because Defendant fails to justify such a high billing rate for Ms. Parsons.[2]  (ECF No. 188 at 8–9.)  The Court agrees that both of these arguments have merit.  Given Ms. McCloskey's relatively limited role in this case, and the lack of any deposition, the Court finds it reasonable to reduce Ms. McCloskey's hours from 41.5 to 35.  As to Ms. Parsons, Defendant has not provided a CV or any information about her experience to justify such a high rate of $350 per hour for an accounting associate. The Court will therefore reduce Ms. Parsons' rate to $250 per hour.  This results in a total expense of $36,813, which the Court deems reasonable.

As to Defendant's request for reimbursement of online legal research fees, Plaintiff fails to respond at all.  Defendant argues that Plaintiff has confessed the Fee Motion as to these expenses.  (ECF No. 190 at 9.)  However, the Court notes that the case law is inconsistent on whether legal research should be considered overhead or whether it may be billed in its entirety.  The Tenth Circuit noted in *Case* that research expenses intended "to familiarize the attorney with the area of law would normally be absorbed into a firm's overhead and that, therefore, attempting to charge an adversary

---

[2] Plaintiff also argues that this time is not compensable because it related to damages associated with the breach of the implied covenant of good faith and fair dealing, which does not arise out of the Agreement, and no research related to the fraud or conversion claims should be compensable because those claims were not tried.  (ECF No. 188 at 9.)  The Court already rejected Plaintiff's argument that the claim that was tried was not related to the Agreement.  As to the fraud and conversion claims, the Court granted summary judgment in Defendant's favor on those claims, and thus Defendant's efforts in defeating those claims were reasonably necessary.  The Court declines to reduce Defendant's expenses based on either of these arguments.

with time spent conducting background research is presumptively unreasonable."
*Case*, 157 F.3d at 1253.

In this case, the online legal research expenses note the date, attorney's name, and price, but do not indicate the subject of the research, and only some of these entries can be cross-referenced to counsel's time entries.  Even of those entries that can be cross-referenced, most descriptions are so general that the Court cannot determine whether many of them were merely "background research."  *See id.*  Based on this lack of clarity, the Court will reduce Plaintiff's reimbursement for online research expenses by 25 percent.  The resulting amount is $12,888.28, which the Court finds is reasonable.

e.    *Summary*

In total, the Court grants the Fee Motion in part, and awards Defendant $476,297.50 in fees and $49,700.78 in non-taxable expenses pursuant to § 9.02 of the Agreement.

2.    <u>Piercing the Corporate Veil and Joinder</u>

Defendant seeks to hold Mr. Oliver personally liable for paying the instant award of fees and expenses and the costs already taxed by the Clerk of Court, and to that end, Defendant requests that Mr. Oliver be joined as a party and the corporate veil be pierced.  (ECF No. 175 at 13–15, ECF No. 177.)  For the reasons discussed below, the Court finds that the instant case is not one of the exceptional circumstances that warrants piercing the corporate veil, and denies that request.  This renders moot Defendant's request for joinder, as the purpose of joinder was solely to permit piercing the corporate veil.

19

First, Defendant argues that the state of incorporation sets the standard for piercing the corporate veil.  (ECF No. 177 at 7.)  Because Plaintiff is a Pennslyvania corporation, Defendant applies Pennsylvania law to this analysis.  (*Id.*)  While Plaintiff does not explicitly contest Defendant's argument, Plaintiff's response to the Joinder Motion cites the "federal common law" standard articulated by the Tenth Circuit rather than Pennsylvania law.  (ECF No. 189 at 5 (citing *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047 (10th Cir. 1993)).)  Thus, the Court must determine which law to apply here.

In an unpublished 2011 decision, another judge in this District reviewed the relevant law and concluded that "the law of the state of incorporation is applicable to veil-piercing issues."  *Francis v. Starwood Hotels & Resorts Worldwide, Inc.*, 2011 WL 3351320, at *3 (D. Colo. Aug. 3, 2011).  The analysis began with Colorado law, as "[a] federal court exercising diversity jurisdiction applies the choice of law rules of the forum state."  *Id.* at *2.  Because Colorado courts have not directly addressed this issue, the court in *Francis* noted that Colorado courts generally look to the Restatement (Second) of Conflict of Laws in resolving such issues, and found that the Restatement agreed with numerous other federal courts, including another prior decision in this District, in applying the law of the state of incorporation.  *Id.* at *2–3 (citing cases).  The Court agrees with that analysis, and concludes that Defendant correctly applied Pennsylvania law to the question of whether to pierce Plaintiff's corporate veil.

"Piercing the corporate veil is a means of assessing liability for the acts of a corporation against an equity  holder in the corporation."  *Vill. at Camelback Prop. Owners Assn. Inc. v. Carr*, 538 A.2d 528, 533 (Pa. Super. Ct. 1988), *aff'd*, 572 A.2d 1

(Pa. 1990).  Under Pennsylvania law, courts evaluating such a claim are tasked with "determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operations of the dominant shareholder."  *Id.*  Making such a determination requires an inquiry into "whether corporate formalities have been observed and corporate records kept, whether officers and directors other than the dominant shareholder himself actually function, and whether the dominant shareholder has used the assets of the corporation as if they were his own."  *Id.*  Ultimately, "[p]iercing the corporate veil is admittedly an extraordinary remedy preserved for cases involving exceptional circumstances. . . wherever equity requires that such be done either to prevent fraud, illegality or injustice or when recognition of the corporate entity would defeat public policy or shield someone from public liability for crime."  *Id.*; *see also Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978) (the corporate fiction "will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless").

Defendant argues that piercing the corporate veil is warranted here because Mr. Oliver "has used Bio Med's assets as if they were his own."  (ECF No. 177 at 8–9.) Defendant alleges that Plaintiff's corporate bank account statements are replete with personal expenses, including restaurant meals, lawn care, and pool maintenance; that Mr. Oliver commingled corporate funds with other assets, making over $300,000 in deposits from his personal account into the corporate account; that Plaintiff maintained no other corporate financial records and filed no tax returns; and that Plaintiff appears to have been created solely to enter into the Agreement with Defendant, as it had no

prior business or revenues, never entered into any other contract, and currently lacks any assets.  (*Id.*)

Plaintiff's response does not contest any of these allegations.  Instead, Plaintiff argues that its current lack of assets is a result of Defendant's actions interfering with Plaintiff's performance of the Agreement.  (ECF No. 189 at 5–6.)  However, as discussed above, the jury has already found that Defendant did not breach the implied covenant of good faith and fair dealing in the Agreement, and the explicit breach of contract and tort claims were dismissed on summary judgment.  By failing to contest Defendant's allegations, Plaintiff essentially admits that Oliver failed to observe corporate formalities and "has used the assets of the corporation as if they were his own."  *Vill. at Camelback*, 538 A.2d at 533.

However, the Court must still determine whether the "extraordinary remedy" of piercing the corporate veil is warranted in order "to prevent fraud, illegality or injustice or when recognition of the corporate entity would defeat public policy or shield someone from public liability for crime."  *Id.*  Defendant does not point to any public policy or criminal liability at issue here, and instead argues that equity requires piercing "because Sorin will likely be unable to collect" its fees and costs from Plaintiff.  (ECF No. 177 at 2.)  Without more, the Court disagrees with Defendant that this constitutes "exceptional circumstances" warranting such an "extraordinary remedy."  *Vill. at Camelback*, 538 A.2d at 533.

The Court has reviewed numerous cases applying Pennsylvania law and concludes that a corporation's mere lack of assets to pay a debt is insufficient to establish the sort of injustice that merits an extraordinary remedy.  *See, e.g., Coll.*

22

*Watercolor Grp., Inc. v. William H. Newbauer, Inc.*, 360 A.2d 200, 207 (Pa. 1976) (piercing corporate veil because individual threatened to cause corporation not to pay debt to defendant in order for individual to obtain controlling interest in defendant); *Rinck v. Rinck*, 526 A.2d 1221, 1222–23 (Pa. Super. Ct. 1987) (piercing corporate veil because individual formed a corporation in order to avoid paying pre-existing alimony obligation); *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967) (applying Pennsylvania law, declining to pierce corporate veil because disregard of corporate formalities alone was insufficient to establish "fraud or injustice").  The Court further notes that even "[t]he organization of a corporation for the avowed purpose of avoiding personal responsibility does not of itself, however, justify disregard of the corporate entity." *Zubik*, 384 F.2d at 273 n.15; *see also id.* at 273 ("Limiting one's personal liability is a traditional reason for a corporation.  Unless done deliberately, with specific intent to escape liability for a specific tort or class of torts, the cause of justice does not require disregarding the corporate entity.").

The Court's decision is further supported by Tenth Circuit caselaw applying the federal common law, which, in discussing that law's parallel requirement to show that equity requires piercing in order to avoid fraud or injustice, noted that "[i]n most cases the mere fact that a corporation is incapable of paying all its debts is insufficient for a finding of injustice.  That condition will exist in virtually all cases in which there is an attempt to pierce the corporate veil." *Greater Kan. City Roofing*, 2 F.3d at 1053.  The Court believes that the instant case is such a typical circumstance; while Plaintiff may be insolvent, its inability to pay its judgment is insufficient to demonstrate injustice sufficient to require the equitable remedy of piercing the corporate veil.

Consequently, the Court denies Defendant's request to pierce the corporate veil in this case.  As the sole purpose of joining Mr. Oliver as a party was to permit piercing the corporate veil, the Court has no need to consider Defendant's arguments as to joinder.  Accordingly, the Joinder Motion is denied in its entirety.

## III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1) Plaintiff's Motion for Judgment Notwithstanding Verdict (ECF No. 184) is DENIED;

2) Plaintiff's Motion for New Trial Pursuant to Rule 59 (ECF No. 185) is DENIED;

3) Defendant's Motion to Join Jack Oliver as an Additional Party Pursuant to Fed. R. Civ. P. 21 (ECF No. 177) is DENIED;

4) Defendant's Motion for Reasonable Attorneys' Fees and Non-Taxable Costs (ECF No. 175) is GRANTED IN PART and DENIED IN PART; and

5) Defendant is AWARDED attorneys' fees in the amount of **$476,297.50** and reimbursement of additional expenses in the amount of **$49,700.78** pursuant to the contract between the parties.  The Clerk shall enter judgment accordingly.

Dated this 24th day of March, 2016.

BY THE COURT:

_____

William J. Martínez
United States District Judge